No. 15,482.

DENVER EQUIPMENT COMPANY *v.* NEWELL.
(169 P. [2d] 174)

Decided April 29, 1946.

·Mr. J. G. HOLLAND, for plaintiff in error.

Mr. EDGAR McCOMB, Mr. GODFREY NORDMARK, for defendant in error.

24

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

THE Denver Equipment Company instituted this action against Beatrice V. Newell to recover for damages to its automobile which resulted from a collision with the automobile of defendent at a Denver street intersection. Defendant filed a counterclaim, seeking a judgment for damages to her automobile growing out of the same accident. At the conclusion of the evidence a motion by plaintiff for "nonsuit of the counterclaim of defendant," was granted. Each party then moved for a directed verdict, whereupon the court instructed the jury to return a verdict in favor of the defendant, upon which judgment was duly entered. Plaintiff, seeking a reversal of the judgment, has brought the case here by writ of error. Defendant has filed no cross specification covering the court's action in granting the nonsuit of her counterclaim.

Plaintiff alleged that the damages to its automobile resulted from the negligent operation by defendant of her automobile. Defendant by answer denied any negligence on her part, and, by way of counterclaim, alleged that her car had been damaged by reason of the negligent operation of plaintiff's automobile, which negligence was the proximate cause of such damage.

The evidence revealed that on February 23, 1943, at approximately 4:30 o'clock P. M., plaintiff's automobile, operated by an employee, was being driven westerly on East Thirty-second avenue, and defendant, in her car, was proceeding notherly on Steele street. There is no allegation or proof that either car was being operated at an unlawful rate of speed. The collision occurred at the intersection of the two streets mentioned.

Section 65 (a) of the Denver Municipal Traffic Code reads as follows: "Every driver of a vehicle approaching the intersection of a street shall yield the right-of-way

at such intersection to the driver of any vehicle approaching from the right, and the driver of the vehicle on the left shall decrease the speed of the vehicle operated by him and have said vehicle under control before crossing such intersection, and it shall be his duty to yield the right-of-way to the vehicle on the right.* * *" Ordinance No. 16, Series of 1932. Under this section and the evidence, there can be no question that plaintiff had the right of way and was then protected in the enjoyment of all the advantages afforded by it. At the time of the accident sleet was falling, but both cars were equipped with defrosters, and the vision of the drivers was not obscured either by sleet nor by any structure on the corners of the intersection. The evidence of the driver of plaintiff's car was taken by deposition, and, with reference to the occurrences preceding and at the instant of the collision, he testified: "Q. Just describe in your own words what happened immediately before and at the time of the collision. A. I was driving west on 32nd and there was no obstruction on the left side of the road on which I was going. She was driving north on Steele. I looked in both directions well back in the block and the road was clear, and as I entered the intersection I looked just in time to see her car coming towards me, and at the time I saw her I was just —well, I was just a few feet inside of the intersection— and I just glanced out to my left and I could see her coming into the intersection. At that time I naturally tried to stop but I couldn't. There wasn't time enough. * * * Q. Are there any buildings located on any of the corners of the intersection of East 32nd and Steele? A. No, there are no buildings there on any of the four corners."

On cross-examination the witness testified: "Q. Were there any obstructions whatever to your vision to the left? A. No. Q. How far down Steele Street could you see from your position as you approached Steele Street on 32nd Avenue? A. Well, the corner on my left as

I was going down 32nd— Q. That would be the southeast corner? A. That's right. The southeast corner; there has no obstructions on it. Q. How far down Steele Street could you see as you approached the intersection? A. About half a block. Q. Did you see Mrs. Newell's car approaching? A. No, I didn't; not until I entered the intersection. Q. Did you look to the left as you drove along? A. Yes. Q. How do you account for the fact that you didn't see her car although there was no obstruction in the way of your vision, considering the fact that you said you looked? A. That's right. It was probably the fact that I looked back maybe a block back. Q. Then you mean that you looked to the left when you were a block away from the intersection? A. I just glanced out of the corner of my eye. Q. Then you didn't look to your left again until you entered the intersection? A. That's right. Q. When did you first see Mrs. Newell's car? A. As I was just entering the intersection. * * * Q. After seeing the Newell car approaching did you veer to the right to avoid an accident? A. I believe what I did was try to stop. Q. You made no attempt to swing your car out of the path of the oncoming machine? A. That would be pretty hard to say. Q. Well, as you remember it, did you or didn't you? A. I don't know."

While the specification of points set forth seven grounds for reversal, nevertheless plaintiff's position may be succinctly stated to be that the trial court committed error in directing a verdict and entering a judgment on the ground that plaintiff's agent was guilty of negligence in failing to avoid the collision even though he had the right of way under the provisions of the Denver Traffic Code.

Plaintiff relies upon our decision in *Buerger Brothers Supply Co. v. Denver Fire Reporter & Protective Co.*, 108 Colo. 40, 113 P. (2d) 671, and, with reference to our decision in that case and its application to the instant case, its attorney states: "Plaintiff submits

that in its only previous decision which involves facts similar to those in the instant case (that of *Buerger Brothers v. Denver Co.*) this Court held that there was no contributory negligence. The only difference in the facts involved is that in the Buerger's case the plaintiff's view to the right was obstructed by a building while in the instant case there was no obstruction. *In both cases plaintiff's vision to the left was unobstructed."*

The driver of plaintiff's car was, under the provisions of the Denver Traffic Code, entitled to all of the protection afforded thereby, and under the factual situation here, his right of way must be conceded. Considering the evidence of the driver of plaintiff's car at the time of the collision and the factual situation with reference to the intersection, the following interrogatory would seem pertinent: Was plaintiff's agent guilty of such contributory negligence as to preclude recovery as a matter of law or was it a question of fact properly to be submitted to the jury for determination? As we understand the right of way rule of the City Code, we believe that it is relative and not exclusive; it certainly does not justify one who is entitled to it in insisting on the right of way when, by the exercise of reasonable judgement and care, he must, or should, know that a collision is likely to occur with resulting personal injury and property damage. One who insists upon the exercise of his right of way under circumstances which would cause a reasonably cautious and prudent person to yield the same is clearly guilty of either negligence or contributory negligence, as the case may be.

In *Boyd v. Close*, 82 Colo. 150, 257 Pac. 1079, one of the questions for determination was the relative rights of autoists approaching a street intersection, and in discussing that subject we said:

"We are now asked to fix responsibility in every case of automobile crossing collision in favor of the car having the right of way under the strict provisions of

statute, ordinance, or rule of the road, notwithstanding drunkenness, gross negligence and excessive speed, and notwithstanding every reasonable precaution exercised by the other under circumstances which the first driver knew, or should have known, would in all probability prove ineffectual; to outlaw every left hand driver and give carte blanche to every right hand driver to run him down. The mere statement of the proposition is its own refutation. We know of no court that has ever countenanced it and we expressly repudiate it."

"Within the last few years, traffic regulations have been very generally enacted which give a right of way at street and highway intersections to vehicles approaching from the right, * * * A statute so fixing the right of way is to be reasonably construed and applied, so as to embrace all situations in which the danger of collision exists. Its main purpose is to demand care of the driver commensurate to the danger of collision. *This right of way is not an absolute right, but a relative right.* The statute fixing it is a road regulation and not an inflexible standard by which to decide questions arising out of collisions at intersections. * * *" (Italics ours) Vol. 3-4, Huddy, Cyclopedia of Automobile Law (9th ed.) pp. 253, et seq., §150.

"Though one is given the right of way by a regulation, it remains his duty to exercise reasonable care to avoid collisions with other vehicles. He cannot proceed across an intersection without any regard to the presence of other cars. * * *" Vol. 3-4, Huddy, Cyclopedia of Automobile Law (9th ed.) p. 278, §154.

In the instant case plaintiff's driver had, as we have said, the right of way, notwithstanding which he could not rightfully, by virtue of it, proceed. blindly and, relying upon the right, wholly disregard automobiles approaching from his left. The undisputed evidence offered by plaintiff's driver clearly and conclusively establishes that when he approached the intersection of Thirty-second avenue and Steele street he had an

unobstructed view of the latter, both to the right and to the left. He did nòt look to the left. Whether, under such circumstances, he exercised the care and caution required of a careful and prudent driver, was a question of fact for the jury, and if it should determine that he did not exercise that degree of care and caution, it was for it to say whether, by failing so to do, he was guilty of negligence which was the proximate or contributing cause of the damage.

■ We are here confronted with the question as to the proper disposition of an action where, at the conclusion of all of the evidence, both plaintiff and defendant interpose motions for a directed verdict. The answer to the question involves a construction of rule 50, R.C.P. Colo., that rule being identical with rule 50, Federal Rules of Civil Procedure, which became effective September 16, 1938, while our rule 50 became effective April 6, 1941.

In August, 1938, the United States Circuit Court of Appeals for the Fourth Circuit handed down its decision in *Zaks v. Elliott,* 106 F. (2d) 425, in which it said: "In the opinion subsequently filed, the court found both the facts and the law and stated that the case had been withdrawn from the jury under Rule 50 (b) of the Rules of Civil Procedure, 28 U.S.C.A. following Section 723 c. That rule permits the trial court to reserve its decision on a motion for directed verdict until after the jury has returned its verdict but does not authorize withdrawing the case from the jury entirely. The action of the court resembled the old practice, now abolished by Rule 50 (b), of withdrawing the case from the jury when both parties moved for a directed verdict. There was, however, no material error in the instant case for both parties not only consented to the court's action, but were anxious to have the case decided as a question of law by the court. The case may properly be treated as one in which the parties agreed at the outset not to havè a jury."

In the instant case both parties moved for a directed verdict, with the result already noted. The record reveals that neither party thereafter requested or suggested that there was any factual question for the jury's determination, nor was there any request or suggestion that the court should submit any factual questions involved to the jury for its determination, and thereafter rule upon the legal questions raised by the motions. Under these circumstances we feel that the language of the court in *Zaks v. Elliott, supra,* is applicable, and inasmuch as the decision was announced prior to the adoption of our rule 50, it is persuasive, and we elect to follow it.

█ Our construction of section 65 (a), supra, of the Denver Traffic Code may not be in harmony with our decision in *Buerger Brothers Co. v. Denver, supra.* If not, in so far as our decision here may be in conflict therewith, that decision is expressly overruled.

The judgment, accordingly, is affirmed.