No. 18,561.

JOHN EAGAN *v.* JEROME MAISELSON.
(350 P. [2d] 567)

Decided March 28, 1960.

Mr. MYRON H. BENNETT, for plaintiff in error.

Mr. JOHN D. RYAN, Mr. THOMAS J. MITCHELL, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties are here in inverse order of their appearance in the trial court, and will be referred to us as they there appeared, or by name.

The complaint alleged that on July 14, 1955, at approximately 8:15 p.m., plaintiff was operating a motorcycle in an easterly direction on West Colfax Avenue when defendant, driving an automobile in a westerly direction on West Colfax, carelessly and negligently, without signal or notice, made a left turn immediately in front of plaintiff's approaching motorcycle, causing plaintiff to collide with defendant's car, resulting in personal injuries and property damage to plaintiff.

Defendant by answer admitted that such collision occurred but denied all other allegations of the complaint, and alleged that the damage and injury complained of was caused by plaintiff's negligence or contributory negligence.

Trial was to a jury and upon conclusion of all the evidence the defense of contributory negligence was withdrawn from the jury's consideration by the trial court. The jury returned a verdict for plaintiff in the sum of $10,313.80. Judgment was entered on the verdict.

Defendant is here by writ of error seeking reversal and asserts that the trial court erred in the following particulars: In taking the defense of contributory negligence from the jury; in rulings on the admission and rejection of evidence, and in denying motions for a mistrial and for a directed verdict.

The record discloses that when the collision occurred it was dark; the streets were dry; the weather clear and the visibility good.

Plaintiff testified that he was operating his motorcycle in an easterly direction on West Colfax Avenue, a four-lane thoroughfare with a posted maximum speed limit of 35 miles per hour, and was traveling on the inside lane at a speed of 30 to 35 miles per hour; that as he approached the intersection of Kendall Street on West Colfax Avenue he noticed an automobile in the intersection signaling for a left turn with his blinker lights and thought the driver would wait until he passed before turning; that a 1955 Chevrolet "dropped out of nowhere" and "it looked like he saw me but, about the time I saw him, it looked like he was going to stop. In fact I think he had almost come to a stop, because the first thing I done when I saw him, I figured the traffic was behind me and I didn't—I applied my brakes easily. I didn't hit hard, and I layed right down trying to head for this empty lot here [referring to a parking lot situated south of Colfax Avenue]. The next thing I knew when I looked up he kept on coming and turned into me." He testified that the car which collided with his motorcycle was not the same automobile that he observed standing in the intersection signaling for a left turn.

Harold Hapgood, a witness for plaintiff who was riding with plaintiff on the motorcycle at the time of the collision, related substantially the same account of the accident as that testified to by plaintiff. In addition this witness testified that the lights on the motorcycle were on at the time of the collision and that defendant's auto-

mobile was parked behind the vehicle signaling for a left turn and suddenly "shot out in front of us."

The officer who investigated at the scene of the collision testified that Kendall street, a paved road running north and south, meets Colfax Avenue which runs east and west, but does not intersect Colfax Avenue; that a parking lot is situated directly opposite Kendall street on the south side of Colfax Avenue; that a narrow graveled road running north and south is located just east of such parking lot; that Colfax is not divided by a double yellow line at the place where the collision occurred.

The officer testified that no skid or brake marks were left by the motorcycle; that the point of impact was a distance of 10 to 12 feet from the south edge of Colfax; that the automobile came to rest approximately eighteen inches from the south edge of the pavement; that the motorcycle collided with the right front wheel of the automobile, and that the front of defendant's car was pushed seven feet to the east by the force of the impact.

Defendant testified as follows: He was following an automobile operated by Harold LaRose at the "Playmor" which adjoins said parking lot. As he approached Kendall street LaRose had turned at the intersection of Kendall and Colfax and entered the parking lot; that there was no car in front of him when he entered the intersection with his left blinker signal on while he waited for several eastbound cars to proceed. His headlights were on dim and he could see approximately 150 feet in front of his car, but did not see an approaching vehicle or the lights of an approaching vehicle. He then executed a left turn in low gear at a speed of four to five miles per hour; was almost across Colfax and had begun to turn right into the parking lot when the collision occurred. He did not see the motorcycle until it was a few feet from his car.

Defendant's testimony was corroborated by Harold LaRose who testified that after getting out of his car in

the parking lot he saw defendant's car in the intersection waiting to make a left turn. There was no car immediately ahead of defendant's automobile, therefore he started a left turn and the collision occurred. The witness did not see the motorcycle before the impact.

Another witness, E. L. Montgomery, testified that he was traveling on West Colfax Avenue at a speed of 35 miles per hour when a motorcycle carrying two men, proceeding in the same direction, passed him at Pierce street, several blocks west of the accident, and his was the first automobile from the west to arrive at the scene of the accident. This witness was not permitted to give his estimate of the motorcycle's speed, nor whether he observed the motorcycle's lights. This we think was error. A person of reasonable intelligence may express an opinion of the speed of an automobile or other moving object coming under his observation without proof of further qualifications. *Sherry v. Jones,* 133 Colo. 160, 292 P. (2d) 746.

Over the objection of defendant the trial court instructed the jury, in part, as follows:

"You are instructed that the Court has determined that there is no evidence in this case of any negligence on the part of the plaintiff which could have been a contributing cause of the accident. "You are therefore instructed that you are not to consider the issue of contributory negligence as raised in the pleadings in this case."

Defendant contends that the giving of this instruction was error in light of the evidence as above set forth and the applicable statutes. One such enactment was set forth in an instruction to the jury and provided as follows:

"13-4-53. *Vehicle turning left at intersection.* The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to consti-

tute an immediate hazard, *but said driver, having so yielded and having given a signal when and as required by section 13-4-51, may make such left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn.*" (Emphasis supplied.) [Reference is to C.R.S. '53.]

Plaintiff, according to his testimony, was traveling at a minimum speed of 30 to 35 miles per hour in a 35 mile per hour zone and observed automobiles turning left at said intersection; that he failed to decrease his speed on approaching the intersection and that observing defendant negotiating a left turn he also failed to "hit" his brakes. On the contrary his testimony was that he "layed right down trying to head for this empty lot here. The next thing I knew when I looked up he kept on coming and turned into me." This is amplified by the officer's testimony that the motorcycle did not leave a brake or skid mark on the pavement.

Defendant, on the other hand, testified that after permitting several cars to pass and observing no headlights of another vehicle approaching he then executed a left turn.

From this testimony reasonable men might conclude that plaintiff was negligent in failing to "yield the right of way to the vehicle making the left turn" and that plaintiff was not "so close thereto as to constitute an immediate hazard," as provided in C.R.S. 13-4-53, supra.

Defendant also requested an instruction based upon C.R.S. 13-4-33, which was refused by the court. So much of that enactment as is material, reads as follows:

"Section 13-4-33. *Speed limits*—(the first paragraphs set forth the speed limits for various districts including business and residential). (3) The fact that the speed of a vehicle is lower than the foregoing prima facie limits *shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * and speed shall be decreased as may be*

*necessary to avoid colliding with any person, vehicle, * * * on or entering the highway in compliance with the legal requirements and duty of all persons to use due care."* (Emphasis supplied.)

Whether plaintiff's speed exceeded that which was reasonable and prudent under these circumstances, as required by C.R.S. 13-4-33, supra, was a question for the jury.

There was evidence from which the jury might infer that plaintiff was exceeding the speed limit. One witness testified that he was traveling west at 35 miles per hour, the maximum speed limit, when defendant's motorcycle passed him going the same direction. This witness was driving the first car from the west to arrive at the scene of the accident and although not permitted to give his estimate of the motorcycle's speed, the jury might infer from his testimony that plaintiff was exceeding the lawful speed limit at the time of the collision. Moreover the investigating officer testified that the front of defendant's car was pushed seven feet sideways from the force of the impact. This, too, was evidence from which the jury might infer that plaintiff was traveling at an excessive speed. See *Brice v. Miller,* 121 Colo. 552, 218 P. (2d) 746.

Lastly, defendant's testimony that he did not see the headlights of an approaching vehicle as he prepared to make a left turn, would entitle the jury to infer that plaintiff did not have his lights turned on.

"Where fair-minded persons may form different opinions and draw different conclusions *or inferences* even from undisputed facts, the questions of negligence, contributory negligence and proximate cause are for determination by the jury." (Emphasis supplied.) *Yockey Trucking Co. v. Handy,* 128 Colo. 404, 262 P. (2d) 930. See, also *McCarthy v. Eddings,* 109 Colo. 526, 127 P. (2d) 883; *Publix Cab Co. v. Phillips,* 98 Colo. 542, 58 P. (2d) 486.

Here a conflict on the issue of contributory negli-

gence is found in the testimony of both parties and in that of their witnesses. If we accept the testimony of the defendant, then no vehicle was within the intersection or so close thereto as to constitute an immediate hazard and defendant was entitled to the right of way as he proceeded to make his left turn. If we accept that of the plaintiff then defendant turned directly in front of him and plaintiff had the right of way.

"Putting the matter concretely, we must say that if Castanie's testimony is to be believed, Hungerford ran a red light; if Hungerford's testimony is to be believed, Castanie ran a red light. This presented an issue of fact. Here the trial judge sustained the motion to dismiss plaintiff Eberle's complaint in spite of the fact that there was evidence from which it might be concluded that Castanie was negligent. If the jury on a consideration of the entire case should conclude that Castanie was negligent and that such negligence was the proximate cause of the accident in which plaintiff Eberle was injured, she would be entitled to a verdict in her favor. Where the evidence presents a controverted issue of fact, it is error for the trial court to direct a verdict or dismiss the action." *Eberle v. Hungerford,* 130 Colo. 167, 274 P. (2d) 93.

There being evidence in the record from which the jury might find that plaintiff was contributorily negligent, the trial court erred in taking the issue of contributory negligence from the jury.

Other alleged errors need not be discussed. The judgment is reversed and the cause remanded with directions to grant a new trial.