450

No. 19,712

JEANNE FRANK *v.* A. JACKSON WHINERY

(366 P. [2d] 560)

Decided November 27, 1961.

Messrs. COIT & GRAHAM, Mr. WALTER J. PHILLIPS, for plaintiff in error.

Messrs. TRAYLOR, ELA, KLADDER & HARSHMAN, Mr. DAVID B. PALO, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

The present controversy stems from a collision between two automobiles which occurred in the southwest quarter of the intersection of 5th Street and Rood Ave-

nue in Grand Junction, on October 14, 1958, at about 5 o'clock P.M. This intersection is controlled by a signal light which in sequence exhibits the usual colors of red and green. Rood Avenue runs east and west, with 5th Street running north and south.

Jeanne Frank, a housewife, age 36, was driving on Rood Avenue in an easterly direction towards 5th Street. She testified that as she neared this intersection the light changed from green to red and that she accordingly stopped her vehicle. Mrs. Frank indicated that hers was the first, and in fact the only, vehicle stopped at this intersection which was headed in an easterly direction on Rood Avenue and testified that there were no other cars next to hers. She also "believed" that at the time there was only one lane for east bound travel. However, there was another vehicle coming from the opposite direction on Rood Avenue, which was also stopped at 5th Street for the red light. Mrs. Frank testified that she definitely saw this other vehicle and specifically noted that it did not have its "turn light" on and that she at no time saw any hand signal from its operator to indicate that he intended to make a left-hand turn at this intersection. When her light changed from red to green she proceeded forward into the intersection, intending to continue east on Rood Avenue. However, she soon observed that a collision appeared imminent. To avoid such, she "believed" she waved her left hand in an effort to attract the attention of the driver, that she also tried to honk her horn, that she swerved to her right and that she did not apply her brakes and perhaps speeded up. However, the other vehicle struck the left rear portion of her car, which ultimately came to rest on the southeast corner of the intersection.

Prior to the accident, Mrs. Frank had an existing back injury which she claims was greatly aggravated by this accident. At the time of the accident she was wearing a back brace which she admitted might have had some limited restrictive effect on the manipulation of her ex-

tremities, though she was certain that it in nowise interfered with her ability to operate her vehicle.

The driver of the "other" vehicle, was one A. Jackson Whinery, insurance salesman, age 53, and his version of the accident differed from Mrs. Frank's in several important particulars. He testified that he was driving in a westerly direction on Rood Avenue approaching 5th Street, where he intended to make a left-hand turn to go south on 5th Street. As he neared the intersection the light was red, and accordingly he brought his car to a complete stop. Intending to make a left-hand turn, he was in the lane of travel which was closest to the center line, and while in this stopped position he turned on his blinker light which indicated that he intended to make a left-hand turn. While still in this stopped position, he looked and noticed only one other vehicle, which was coming from the opposite direction on Rood Avenue, and was also stopped because of the red light. When the traffic signal turned green, Whinery moved slowly forward, at the same time giving a hand signal to further indicate his intention to make a left-hand turn. He permitted the car coming from the opposite direction to precede him through the intersection, and after allowing it to pass, he only then proceeded to make his left-hand turn when suddenly Mrs. Frank's car was in front of him. He testified he did not see her car until almost the split second of impact. His left front fender struck the left rear door of Mrs. Frank's automobile. The impact between the two vehicles was comparatively slight, as evidenced by the fact that the cost of repairs to the Whinery vehicle was $18 and to the Frank vehicle $150.

There were no disinterested eye witnesses to the accident, and the only other witness who offered any evidence pertaining thereto was a policeman who arrived at the scene shortly after the accident. He established the point of impact as being in the southwest quarter of the intersection, examined the vehicles and interrogated both drivers. He observed a moderate amount of dust on

the front windshield of the Whinery vehicle. Whinery said his windshield had been cleaned the evening before, and that the dust had accumulated during an ensuing trip to Clifton. At the time of the accident Whinery was looking into the sun, and he admitted the combination of the sun and dust tended to obscure his vision to the "right," but did not interfere with his view "straight ahead" and to his "left." The foregoing is believed to be a fair and impartial synopsis of the evidence adduced upon trial.

A municipal ordinance provided that a driver in the position of Whinery should "yield the right-of-way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given the signal when and as required by the ordinance, may make such left turn and the driver of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left-hand turn." Mrs. Frank contends this ordinance gives her a preferential right-of-way through this intersection, and, conversely, Whinery argues that this same ordinance under the facts gives him the right-of-way. Each readily agrees that whoever has the right-of-way must nonetheless continue to exercise reasonable care. *Denver Equipment Company v. Newell,* 115 Colo. 23, 169 P. (2d) 174; and *Prentiss v. Johnson,* 119 Colo. 370, 203 P. (2d) 733.

Mrs. Frank sued Whinery, charging him with negligence which caused her physical injuries with resultant damages in the amount of $32,137.78, and demanded trial by jury. Whinery denied negligence and affirmatively charged contributory negligence and unavoidable accident. At the conclusion of all the evidence Mrs. Frank moved the trial court to direct the jury to return a verdict for her and submit to the jury only the issue of her damages. In support of this motion it was urged that reasonable jurors could come to only one conclu-

sion, namely that the accident was solely the fault of Whinery. The trial court denied the motion and submitted the case to the jury, which returned a verdict in favor of the defendant, Whinery. Subsequently a motion for judgment notwithstanding the verdict was first filed and then withdrawn, inasmuch as it was not timely filed, and the alternative motion for a new trial was denied. The motion for a new trial alleged that the verdict was contrary to the overwhelming weight of the evidence and that the trial court erred in refusing to direct a verdict in favor of Mrs. Frank. By writ of error Mrs. Frank now seeks reversal of the judgment entered by the trial court on the verdict of the jury.

The only issue to be resolved is whether upon this state of evidence the trial court should have directed a verdict for Mrs. Frank, or, on the contrary, acted properly in submitting the matter to the jury. We conclude that the trial court was correct in declining to direct a verdict and submitting the matter to the jury.

In *Lasnetske v. Parres*, 148 Colo. 71, 365 P. (2d) 250, we said:

"It is well settled in this state that the issues of negligence, contributory negligence and proximate cause are matters generally to be resolved by the trier of the facts, and it is only in the clearest of cases, *where the facts are undisputed and reasonable minds can draw but one inference from them,* that the question of what constitutes reasonable care is ever one of law to be decided by the court." (Emphasis supplied.)

In the instant case the facts are not only disputed, but actually are in sharp conflict in several important particulars.

For example, did Mrs. Frank stop for a red light? She testified that she did. Whinery testified that when he was himself stopped he looked for oncoming traffic and that he saw only *one* vehicle coming from the opposite direction on Rood Avenue, that this vehicle was also

stopped for the red light, that he permitted this vehicle to pass through the intersection before he began to negotiate his turn, and that this vehicle was *not* the one driven by Mrs. Frank. If he be believed, then Mrs. Frank was not stopped for the red light, and if this be true, just how far back from the intersection was she when the light turned green and Whinery began his left-hand turn? Did Whinery have his blinker "turn light" on and did he at any time give the conventional hand signal to indicate his intention to make a left-hand turn? Whinery testified he did, and Mrs. Frank that he did not. Mrs. Frank was wearing a back brace at the time of the accident. She admitted that the brace in some degree did restrict the movement of her extremities, though she denied that it interfered with her ability to drive. Could reasonable minds differ as to the inferences to be drawn from these facts?

The foregoing rhetorical questions demonstrate beyond question that there truly were disputed issues of fact which required submission of the case to the jury. To have directed a verdict for Mrs. Frank would have constituted an unwarranted invasion by the court of a matter properly within the province of the jury. See *Eagan v. Maiselson,* 142 Colo. 233, 350 P. (2d) 567; *Gray v. Turner,* 142 Colo. 340, 350 P. (2d) 1043; and *Farmer v. McColm* 148 Colo. 39, 364 P. (2d) 1059.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.