Hung LUI, Plaintiff–Appellant,

v.

Terry BARNHART, Defendant–Appellee.

No. 98CA1003.

Colorado Court of Appeals,
Div. I.

Aug. 19, 1999.

Lau & Choi, P.C., Woon Ki Lau, Denver, Colorado, for Plaintiff–Appellant.

Bruce & Logan, Bruce A. Logan, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this negligence action arising from a collision between an automobile and a horse, plaintiff, Hung Lui, appeals from the judgment entered upon a jury verdict in favor of defendant, Terry Barnhart. We affirm.

As he was driving home at night, plaintiff's vehicle collided with defendant's horse. The horse had escaped from its corral and had wandered into the street.

Greenwood Village Municipal Ordinance § 6.32.010 (Ordinance), applicable here, requires that owners of animals "shall not fail" to keep their animals physically confined or restrained.

At trial, based on the Ordinance and the horse's presence in the road, plaintiff requested the trial court to instruct the jury concerning negligence per se and *res ipsa loquitur*. The court denied his request for an instruction on *res ipsa loquitur*, but instructed the jurors that violation of the municipal ordinance constituted negligence. The jury determined that defendant was not negligent.

## I.

On appeal, plaintiff argues that, in light of the Ordinance's language, the jury was required to find that defendant was strictly liable as a matter of law. Thus, plaintiff contends, the trial court erred in denying his motions for directed verdict, for judgment notwithstanding the verdict, and for new trial. Although we agree with plaintiff that a violation of the Ordinance would constitute negligence per se, we do not agree that it establishes a strict liability standard.

### A.

The Ordinance provides that:

No person owning or keeping any animal, other than an ordinary domesticated house cat, shall fail to keep said animal on the premises of the owner or keeper unless the animal is:

A. On a leash, cord or chain held by a person who is physically able to control the animal; or

B. Within a vehicle, or similarly physically confined, and without access to passersby.

### 1.

■ As a threshold matter, we reject the suggestion, implicit in plaintiff's argument, that a strict liability criminal offense is synonymous with a strict liability tort. A strict liability criminal offense requires only that proscribed conduct be voluntarily performed. The conduct of the defendant is proved upon a showing of a minimal amount of conscious mental activity. *People v. Rostad*, 669 P.2d 126 (Colo.1983); § 18–1–502, C.R.S.1998. In contrast, strict liability in tort may arise regardless of the defendant's conduct. Such liability exists because of the existence of circumstances which are recognized as inherently dangerous. *See Bradford v. Bendix–Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973) (focus of strict liability in tort is not on conduct of defendant, but rather on the product itself).

■ Hence, even if we were to view the Ordinance as setting forth a strict liability criminal offense, that fact, of itself, would not make its violation also a strict liability tort. *Compare People v. Caddy*, 189 Colo. 353, 540 P.2d 1089 (1975) (speeding is a strict liability offense) *with Eagan v. Maiselson*, 142 Colo. 233, 350 P.2d 567 (1960) (in action for damages for injuries suffered in automobile accident, whether driver's speed exceeded that which is reasonable under the circumstances is question for jury).

### 2.

■ The issue here, then, is whether the Ordinance creates a strict liability tort or simply sets forth a standard that may be used to establish a claim for negligence per se. According to plaintiff, by requiring that no owner "shall fail" to keep an animal confined or restrained, the Ordinance sets forth a strict liability standard. By the terms of the Ordinance, plaintiff argues, once he had proven that the horse was not confined, regardless the reason, the owner, here defendant, was strictly liable for any resultant harm. We disagree.

■ Strict liability in tort does not require proof of fault. *See Wallman v. Kelley*, 976 P.2d 330 (Colo.App.1998). Generally, it is applied in those situations—such as those involving product liability, ultrahazardous activities, and trespass—that inherently may

inure to the harm of another regardless of the conduct of the tortfeasor. Such liability is established by proving the nature of the dangerous product or activity without regard to a defendant's actions. *See Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984); Restatement (Second) of Torts § 402A (elements of strict liability in tort for product liability claims) & § 520 (abnormally dangerous activities) (1965).

In contrast, negligence requires proof that a defendant's conduct falls below an acceptable standard of care. Necessarily, this involves proof of fault. Similarly, the proof of fault required to demonstrate negligence per se is that the defendant violated the standard of care set forth in a statute or ordinance. *Wallman v. Kelley, supra.*

Some situations that may not be considered inherently dangerous to others but could pose a risk of danger under certain circumstances may be regulated by statute or ordinance, which, in turn, may be the basis of a negligence per se claim if the statute is violated. In such situations, the statute itself establishes the standard of care and its violation is equivalent to a breach of duty and conclusively establishes that aspect of a plaintiff's negligence claim.

The difference, then, between a claim for negligence and negligence per se and one for strict liability is in the focus of the standard of care and in what constitutes a breach of the duty established by such standard. Negligence and negligence per se are established by a showing that the defendant's conduct was such that it breached a duty to meet a certain standard of care. Strict liability in tort arises not from conduct proscribed or prescribed under a common law or statutory duty of care, but from circumstances that may exist independent of and regardless of the conduct of the tortfeasor. *See Anderson v. Heron Engineering, Co.,* 198 Colo. 391, 604 P.2d 674 (1979) (focus of a strict liability claim is on the product, not the conduct or knowledge of the defendant); *Miller v. Solaglas California, Inc.,* 870 P.2d 559 (Colo. App.1993) (strict liability imposes liability for harm caused by defective product and is not applicable to negligent installation or service of such product); *cf. Camacho v. Honda Motor Co.,* 741 P.2d 1240 (Colo.1987) (strict liability based on failure to warn, however, such failure may render the product dangerous).

We note, too, that some products and activities that are inherently dangerous also are regulated. In those cases, a plaintiff may have claims in strict liability and negligence per se.

*Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo.1997), contrary to plaintiff's contention, does not say otherwise. Although, in dictum in a footnote, the court stated that the effect of a violation of a statutory standard of care was to make a defendant "strictly liable," it made this observation in the context of discussing whether a statute creates a standard of care such that a violation constitutes negligence per se or whether a statute merely could be evidence of a standard of care for which a breach of duty had to be proven. The court then specifically reaffirmed that the violation of a statutory standard of care under a theory of negligence per se conclusively established negligence. *See Gerrity Oil & Gas Corp. v. Magness, supra; State v. Moldovan,* 842 P.2d 220 (Colo.1992) (if a statute or ordinance establishes a standard of care, then a violation of the statutory duty conclusively establishes a defendant's negligence irrespective of the reasonableness of his or her attempts to carry out such statutory responsibility).

Here, the Ordinance requires an owner to keep animals restrained or confined. Thus, it regulates an owner's conduct. In contrast to certain other codes and statutes, *see, e.g., Colorado Dog Fanciers, Inc. v. City & County of Denver,* 820 P.2d 644 (Colo.1991) (ordinance prohibiting ownership of pit bull dogs is strict liability ordinance), the focus of this Ordinance is not on the dangerous animal. Nor does it flatly prohibit the presence of such animal on a public road. Rather, concerning the animal, the Ordinance sets forth what an owner is to do.

By its focus on the owner's conduct and not on the animal, the Ordinance reflects that only under certain circumstances within the owner's control, may domestic animals be

considered dangerous. Thus, the Ordinance establishes a duty and a standard of care. Hence, a claim based on an alleged violation of the Ordinance, such as here, is properly characterized as negligence per se.

### B.

Plaintiff argues that, even if his claim is one for negligence per se, the mere fact that the horse was out of its corral established, without further proof, defendant's violation of the Ordinance. We disagree. The horse's presence in the road may have been evidence of a violation of the Ordinance, but did not conclusively establish such violation.

A statute or ordinance defines the standard of care for a claim of negligence per se if the plaintiff is a member of the class which the statute or ordinance was intended to protect and if the injuries suffered were the type the statute or ordinance was enacted to prevent. *Gerrity Oil & Gas Corp. v. Magness, supra.*

By simply requiring owners to keep their animals physically restrained or confined, it is apparent that the Ordinance was enacted to protect members of the public from the dangers which may be created when such animals are not confined or under control. Plaintiff clearly is a member of the public to be protected. Also, a collision between a car and a loose animal is reasonably foreseeable, and therefore, the injuries suffered by plaintiff are of the type which the Ordinance was intended to prevent. *See Walcott v. Total Petroleum, Inc.,* 964 P.2d 609 (Colo.App.1998) (foreseeability of injury is essential to claim of negligence per se).

Here, because the Ordinance regulates defendant's conduct, it must be shown that his conduct violated the Ordinance. Thus, the fact that the horse was outside the corral and in the road is obvious evidence that defendant may have indeed violated the Ordinance. However, plaintiff still must prove that defendant did fail to confine the horse.

Evidence was presented by defendant that he had moved into the house with the horse property two years prior to the accident and immediately had begun repairing and reconstructing the corral, fences, and gate with state-of-the-art construction and materials. Because the property backed up to a frequently used public trail, the gate through which the horse escaped was accessible by the public and could be opened without anyone noticing. Defendant's stepdaughter testified to checking the gate and lock the night the accident happened and that it was her and her mother's habit, routine, and practice to do so every evening. Further, no horse on defendant's property had escaped in the two years that defendant and his family had maintained the property.

Under these circumstances, it was possible for the jury reasonably to determine that defendant had complied with the Ordinance by keeping his horse confined. Therefore, the jury also reasonably could have found that defendant had not violated the Ordinance and, thus, was not negligent.

### II.

Because we affirm the jury's verdict, we also conclude that the trial court did not err in denying plaintiff's motions for directed verdict, for judgment notwithstanding the verdict, and for new trial.

We also need not address defendant's contention that the Ordinance conflicts with state statutes regulating animals at large and, therefore, cannot serve as a standard of care to establish negligence per se.

### III.

*Barnes v. Frank,* 28 Colo.App. 389, 472 P.2d 745 (1970), is dispositive of plaintiff's final contention that the trial court erred in refusing to instruct the jury concerning *res ipsa loquitur.* In *Barnes,* a division of this court determined that, in order for the doctrine to be applicable, there must be a showing that: 1) the instrumentality is under the exclusive control of the defendant, 2) the accident is of a kind that ordinarily would not occur in the absence of the defendant's negligence, and 3) the accident was not due to any voluntary act or contribution on the part of the plaintiff.

Applying these standards to the facts of the case, the *Barnes* court determined that

the fact that cattle were found on the highway did not, of itself, create a presumption of negligence against the defendant because the second requirement, that the accident would not occur but for some negligence on the defendant's part, was not satisfied.

Similarly, here, defendant's horse's presence on the roadway could be due to any number of factors, including the opening of the gate by an unknown third party. Thus, the trial court did not err in refusing plaintiff's tendered instruction.

The judgment is affirmed.

Judge METZGER and Judge CRISWELL concur.