No. 18,173.

Roland W. Swanson *v.* George T. McQuown.
(340 P. [2d] 1063)

Decided June 15, 1959.    Rehearing denied July 6, 1959.

Mr. GEORGE J. FRANCIS, Mr. ROBERT W. HANSEN, for plaintiff in error.

Messrs. McCOMB, ZARLENGO & MOTT, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error was the plaintiff in the trial court and will be referred to as plaintiff. He seeks reversal of

a judgment entered on a directed verdict in favor of the defendant.

The action sought recovery for personal injuries. Plaintiff was a passenger in a vehicle which was involved in an intersection collision at East 29th avenue and St. Paul street in Denver. The vehicle in which plaintiff, a United States Army Sergeant, was riding was a 1942 Ford which was owned by the United States Government and was then being used as a Military Police Patrol car. The car was being driven by another noncommissioned officer of the United States Army, Corporal Raymond D. Hatfield.

Defendant's car was proceeding in an easterly direction on East 29th avenue. That in which the plaintiff was riding was traveling south on St. Paul street. Looking north from 29th Avenue at the intersection in question a hedge on the northwest corner which runs along the front and the width of the lot along the extreme edge to the corner makes it impossible to see vehicles approaching on St. Paul street. Defendant fixed his speed at 23 miles per hour just prior to the impact. He further said:

"I looked to my right and I looked to my left. I seen this car on this side coming down and I figured I had the right-of-way. Both going about the same speed. Q. In other words, since you were on the right you just weren't going to stop? A. No, I didn't have no right to stop. I was supposed to go right on."

Defendant also testified that he was 12 feet from the west curb of St. Paul when he first saw the M. P. car, and that the latter car was about the same distance from the north curb of East 29th Avenue. He did not apply his brakes at first but when it was apparent that the M. P. car was not going to stop, he then slammed on his brakes. The M. P. car was hit at its right center, the impact was heavy, and defendant's car laid down 42 feet of skid marks. The M. P. vehicle was knocked 27 feet sideways.

Plaintiff testified that the car in which he was riding was going 10 to 15 miles per hour as it entered the intersection. The driver had shifted to second gear. Plaintiff was looking straight ahead and was operating the car radio listening for calls in accordance with his duties. He further testified that defendant made a statement at the scene that he had been looking to the left and had not seen them.

At a trial in United States District Court involving the same set of circumstances, defendant was shown to have said:

"Well as I approached the intersection, I looked at my right for traffic all the time. There wasn't nobody coming, so I turned and looked the other way and here they come, so I slammed on my brakes then and there was an impact."

In the opinion of an expert offered on behalf of the plaintiff, the defendant was traveling at the rate of 27 miles per hour.

The district court held that the accident was caused solely by the negligence of the driver of the car in which the plaintiff was riding. The court said that this driver refused to yield the right-of-way and that this was the cause of the accident since the defendant had not lost his right-of-way. The court pointed out that in order to make out a prima facie case the plaintiff must show, first, that the defendant was negligent, and, secondly, must offer in evidence "an explanation satisfactory unto the law for the failure to yield the right-of-way which he has not done."

In the matter of whether the negligence of the driver of the M. P. car was imputed to the plaintiff, the court said:

" * * * I do not mean to hold by this ruling that the negligence of the driver of the car in which plaintiff was riding was imputable or was imputed to the plaintiff. That is beside the point here. As I see it, the accident

was caused by the negligence of the driver of that car regardless of whether the plaintiff — that could be imputed to the plaintiff or not, I think that is a doubtful question in here, somewhat, under the circumstances. The fact that it was not a private conveyance, the fact that the specific order given to each of these men as to what their duties were and the fact that the plaintiff was performing his duty as he saw it under the regulations to listen to a radio and pay strict attention to what was coming over the air and at the particular moment that is what he was doing. But it is unnecessary, the view I take of the evidence here, to decide that point."

On the question of the status of the plaintiff, the evidence indicated that the driver of the vehicle was subject to orders from the Provost Marshal as to his manner of driving. Plaintiff's job was to operate the radio and listen for calls. He also directed the driver to particular destinations. The Commanding Officer also testified that plaintiff was authorized to prevent foreseeable traffic violations but that the rider does not have responsibility for those which take place quickly and which are beyond his control.

It is the contention of the plaintiff that questions of fact as to the negligence of the defendant and as to the proximate cause of the collision were present and consequently it was error to direct a verdict. Defendant argues that there is a dearth of competent evidence in the record to show that he, defendant, was guilty of negligence. His contention is that since he had the right-of-way he was justified in proceeding into the intersection and consequently could not have been guilty of either negligence or contributory negligence. He also claims that the negligence of Corporal Hatfield must, in these circumstances, be imputed to the plaintiff — this by reason of the difference in rank and the admitted right of plaintiff to give orders to the driver.

1. *Was there sufficient evidence of defendant's negligence to require submission of the case to the jury?*

. ▆▆ We conclude that there was. The trial judge was somewhat doubtful about the opinion evidence that the defendant was traveling 27 miles per hour. However, the testimony, apart from this, would seem to be sufficient. First, defendant failed to look to his left until it was too late to stop. This is borne out by the physical facts at the scene of the accident — the 42 feet of skid marks, the violent collision, together with the fact that the vehicle in which the plaintiff was riding was driven in a circular arc some distance out of the intersection as a consequence of the impact. These facts attest to an unreasonable rate of speed in the circumstances. The corner was a blind one (looking to the left) and thus it is questionable whether the defendant was justified in entering the intersection at a speed of even 23 miles per hour. The mere fact that the speed limit, fixed by ordinance, was 25 miles per hour does not justify driving at that speed under all circumstances. The careless driving provision of the Denver Ordinances requires that a car be driven " * * * at a speed and in a manner which is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing; * * * " *Sec. 511.2, Revised Municipal Code of the City and County of Denver.*

▆▆ The sufficiency of the evidence is in the first instance a question of law, but where as here the evidence establishes the existence of negligence to the level of probability, the question becomes one of fact for the jury. This Court has repeatedly held that where reasonable minds may differ, questions of negligence and proximate cause are for the jury. *Phillips v. Denver City Tramway Co.,* 53 Colo. 458, 128 P. 460; *Lambrecht v. Archibald,* 119 Colo. 356, 203 P. (2d) 897; *Hospital Association v. Long,* 125 Colo. 25, 240 P. (2d) 917; *Schell v. Kullhem,* 127 Colo. 555, 259 P. (2d) 861; *Scott v. Matsuda,* 127 Colo. 267, 255 P. (2d) 403; *Yockey Trucking Co. v. Handy,* 128 Colo. 404, 262 P. (2d) 930.

2. *Is the plaintiff precluded from recovery by reason of the fact that the defendant's car was on the right?* We hold that the question is one for the jury even though defendant was on the right and as against the driver of the car in which plaintiff was riding had the right-of-way or could not be said to have lost the right-of-way. The district court resolved the entire question upon the basis of whether the defendant had "lost his right-of-way." The Judge's comments were as follows:

" * * * The evidence does not show that the defendant has lost his right-of-way. True, there is some evidence of rather doubtful value that the defendant was driving somewhat in excess of the speed limit at that intersection in force at that time. But this is not sufficient to bring about the loss of the right-of-way and make the defendant liable for damages sustained by the plaintiff."

The specific ordinance which governs "loss of right-of-way," Section 512.5, Revised Municipal Code of the City and County of Denver, is not determinative of the present case in which a *passenger* alleges that the driver of the car on the right was guilty of negligence. This is primarily a question of fault as between these two parties, and the fact that the plaintiff's *driver* took the right of way is not necessarily material. A holding that the driver on the right at an uncontrolled intersection has not "lost his right of way" does not exclude the possibility that he has violated some other ordinance or that he has in other respects failed to exercise due care in his relation to a passenger in the car on his left. The reason for this is that the ordinance which deals with right-of-way and loss thereof does not pre-empt all negligence possibilities arising from the violation of other ordinances or common law rules, and does not excuse the person on the right from exercising prudence for the protection of himself and others from an unreasonable risk of harm. *Campion v. Eakle,* 79 Colo. 320, 246 Pac. 280.

It has been held repeatedly that the right-of-way

at an uncontrolled intersection is a relative and not an absolute right. *Golden Eagle Co. v. Mockbee,* 68 Colo. 312, 189 Pac. 850; *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079; *Denver Equipment Co. v. Newell,* 115 Colo. 23, 169 P. (2d) 174. Although these decisions involved controversies between drivers rather than between a driver and a passenger, they support our conclusion in that they recognize the intersection case as not always subject to easy determination. That a mere finding that one of the drivers was on the right does not imply that the other driver was necessarily in the wrong. It follows that the right is a relative one and a passenger in a car on the left is not bound by the right-of-way determination, hence he may recover from the driver of the car on the right provided he is able to sustain the burden of proof as to negligence and proximate cause.

The district court seemingly relied on our decision in *Brickey v. Herring,* 96 Colo. 181, 41 P. (2d) 298, but the facts of that case are different from the facts of the instant case. There the driver on the left was speeding, and the passenger was unable to establish wrongdoing on the part of the driver on the right.

In view of the foregoing, the present case was not determinable by mere reference to the right-of-way ordinance. The ultimate questions are whether the defendant was shown to have violated a duty to exercise reasonable care notwithstanding he had the right of way, and whether assuming failure in this respect, his conduct was a substantial factor in producing the harm to the plaintiff. These were jury questions and it was error to direct a verdict for the defendant.

3. *Must the negligence, if any, of the driver of the M. P. vehicle be imputed to the plaintiff?* This is answered in the negative.

*Defendant* urges that the negligence of the driver, Hatfield, is to be imputed to the plaintiff; that by reason of this plaintiff is barred from a recovery on *this* ground (assuming the negligence of defendant). The trial court

450

disagreed with this contention, and was correct in its conclusion.

■ Whether negligence can be imputed depends on whether the individual with respect to whom it is sought to impute negligence would be liable to a third person for the tort of the subordinate.

" * * * a plaintiff is barred from recovery by the negligent act or omission of a third person if, but only if, the relation between them is such that the plaintiff would be liable as defendant for harm caused to others by such negligent conduct of the third person." A. L. I. Restatement of Torts, Sec. 485.

■ ·The general rule is that a public official is not liable for the wrongful acts of his subordinates on a vicarious basis since the relationship is not a true master-servant situation. 38 Am. Jur. 921, 922, Sec. 235, *Negligence. Dowler v. Johnson,* 215 N.Y. 39, 121 N.E. 487. Here the New York Court of Appeals (per Cardozo, J.) said:

" * * * We do not doubt the rule invoked by counsel for the defendant, and sustained by superabundant citations, that public officers are not liable for the negligence of their subordinates unless they co-operate in the act complained of, or direct or encourage it. Lane v. Cotton, 1 Ld. Raym. 646, 91 Eng. Reprint 1332; Bailey v. New York, 3 Hill 531, 538, 38 Am. Dec. 669; Cardot v. Barney, 63 N.Y. 281, 20 Am. Rep. 533; Robertson v. Sichel, 127 U.S. 507, 32 L. Ed. 203, 8 Sup. Ct. Rep. 1286; Ely v. Parsons, 55 Conn. 83, 10 Atl. 499; Story, Agency, § 399. That is, at least, the general rule, and if it is subject to any other qualifications they are not now material."

The decision of this Court in *Schwalb v. Connely,* 116 Colo. 195, 179 P. (2d) 667, declares and applies the above general rule, holding a hospital superintendent not responsible for the negligence of a subordinate employee.

Our decision in *Denver Tramway Co. v. Orbach,* 64 Colo. 511, 172 P. 1063, relied on by both parties here, is

in harmony with the above general rule and the conclusion which we have reached. The holding there was that the negligence of a civilian driver of a police riot car could not be imputed to a policeman passenger since a "community of interest" or a "common enterprise" was not shown to exist.

The applicable principle was correctly stated in *Veek v. Tacoma Suburban Lines,* 49 Wash. (2d) 584, 304 P. (2d) 700. This was an action by the administratrix of a fire chief, a passenger in a truck involved in a collision with the defendant. The defendant urged that the plaintiff was barred by the negligence of the driver since the decedent had the right to control the crew. The Washington Court rejected this and said:

"It is a well recognized principle that public officers are not liable for the negligence of their subordinates in the operation of a vehicle unless they acquiesce or cooperate in the act complained of, or direct or encourage it. Dowler v. Johnson, 225 N.Y. 39, 121 N.W. 487, 3 A.L.R. 146; Armacost v. Conservation Commission of West Virginia, D. C., 126 F. Supp. 414; Annotation 3 A.L.R. 149. Responsibility of Public Officer for Negligence of Subordinate in Operation of Vehicle; Huddy, Cyclopedia of Automobile Law, supra. Although the right of control over the driver is not sufficient by itself to justify an application of the doctrine of vicarious liability, it is a factor to be considered with all other circumstances in determining whether the decedent was guilty of independent contributory negligence which would be a bar to recovery. In other words, the negligence, if any, of the driver would become a factor in the instant case only if the decedent failed properly to supervise or direct the driver after the decedent had a reasonable opportunity to see or to know that the driver was operating (in the language of RCW 46.08.050) the fire truck 'without due regard for the safety of others,' and whether the decedent was negligent in failing to exercise his authority, or whether he exercised it in a negli-

gent manner, was a question of fact for the jury. Rich v. Warren, 6 Cir. 123 F. 2d 198; Vogler v. Jones, 199 Okl. 156, 186 P. 2d 315; Dowler v. Johnson, supra."

We therefore hold that the facts adduced in the present case do not bring into play the doctrine of imputed negligence. The plaintiff would be barred from a recovery only if it were shown that he had been guilty of negligence in supervising the acts of subordinates, or in directing or authorizing the wrong.

Concluding as we do that the trial court erred in directing a verdict, the judgment is reversed and the cause remanded for a new trial consistent with the views expressed herein.