ARLENE NADEAU AND ANOTHER v. FLOYD
MELIN AND ANOTHER.

110 N. W. (2d) 29.

June 30, 1961—Nos. 38,183, 38,184.

*Meagher, Geer, Markham & Anderson, M. J. Coyne,* and *O. C. Adamson II,* for appellants.

*Nemerov & Perl* and *Richard G. Hunegs,* for respondent Nadeau.

*Scholle, Schweiger & Kalina,* for respondent Mulheran.

KNUTSON, JUSTICE.

These are appeals from orders granting a new trial based exclusively upon errors of law.

Two actions consolidated for trial are involved arising out of a collision between a red automobile used by the city of Minneapolis fire department and an Oldsmobile owned by defendant Mary Melin and operated by her son, defendant Floyd Melin. The facts essential to a determination of the questions presented may be summarized as follows:

On April 17, 1958, a red automobile used by the fire department of the city of Minneapolis was being driven by Roger E. Oldre, a fireman and substitute driver. Riding with him was a fire captain, plaintiff George E. Mulheran, who at that time was acting as assistant fire chief. At about 1:30 p. m. on the day involved, Oldre and Mulheran were driving on Nicollet Avenue on their way to a meeting at the courthouse. They stopped at the intersection of Seventeenth Street and Nicollet Avenue to wait for a stop light to change from red to green, and, while so parked, they received a call over their radio that there was a fire at 4236 Park Avenue and that it was an alarm for a station then under the supervision of Mulheran. They acknowledged the call by radio. After waiting for a bus in front of them to proceed, they turned east on Seventeenth Street and proceeded to cross First Avenue, Stevens Avenue, and Second Avenue, and the collision involved here occurred when they entered Third Avenue. Mulheran testified that their car proceeded along Seventeenth Street at a speed of about 20 to 25 miles per hour and that they slowed to approximately 10 miles per hour as they crossed the intersecting streets. There was no traffic to interfere with their progress. Mulheran testified that the fire-department car was traveling at the rate of about 10 miles per hour as it entered the crosswalk of Third Avenue. Other witnesses testified

that the car was then traveling about 30 miles per hour. Mulheran testified that during all the time that he traveled from Nicollet Avenue to Third Avenue the siren was on and that the flashing "Mars" light located on the top of the automobile had been turned on. He testified that he periodically switched the siren on and off in order to prevent burning out the siren's motor but that it was sounding during all the time he traversed this distance. A number of other witnesses testified that the siren came on just an instant before the crash of the two automobiles.

Defendant Floyd Melin was driving his car in a southerly direction on Third Avenue. As he approached Seventeenth Street he overtook and passed a car ahead of him, crossing over the centerline to do so. Third Avenue is 60 feet in width, and the center is marked by a yellow line. It is an arterial street, protected by stop signs at the intersection with Seventeenth Street. Melin testified that when he was about 30 or 40 feet north of the intersection he first heard a siren and thought that it was coming from his rear and that when he was 5 or 10 feet from the curb line he first saw the fire vehicle on Seventeenth Street. It was then about even with the west crosswalk. He was traveling at a speed of about 25 or 30 miles per hour and did not apply his brakes or take any other action to avoid the collision. It is conceded that the fire vehicle did not stop for the stop sign before entering Third Avenue. The front end of the Melin car struck the fire car in the center of its left side, the impact apparently occurring about in the middle of the intersection.

The car driven by Melin had been purchased recently and some remodeling was being done on it. Its horn was not operating. Its muffler was somewhat noisy, and the front seat had been removed. In place of the front seat, the cushion from the rear seat was used to sit on as the car was being driven. Such seat had no back on it.

With respect to the management and control of the car, Mulheran testified as follows:

"Q. And you were in charge of that car in that capacity [as temporary chief] on the day of the accident, were you?

"A. In command of it, yes, sir.

"Q. And by being in command of it, do you mean that the driver was subject to your direction?

"A. The driver is subject to my command, yes, sir.

"Q. Both as to details of handling the car and its equipment, and as to destination?

"A. Yes, sir.

"Q. So anything you wanted done in the way of handling of the car, your relationship with your chauffeur or driver, you would have authority to direct him?

"A. He would obey my command, yes, sir.

"Q. Does that including commanding him with respect to the speed at which he would travel?

"A. Not unless I deem it necessary.

"Q. Well, if you chose to travel at a given speed, you had authority to instruct him?

"A. Yes, sir.

"Q. And with respect to whether or not you should or should not go through an arterial stop sign, you had authority to tell him not to do it, or do it, did you not?

"A. I had authority to tell him not to do it. We are instructed, however, on all of our—

"Q. That isn't my question. I am asking you as to your right to authorize and instruct the driver.

"A. He is under my command at all times."

There is no dispute but that the car was under the control and management of Mulheran.

Oldre died as the result of injuries sustained in the accident. An action was brought by his trustee for the benefit of his next of kin, and Mulheran sued to recover for injuries which he sustained. The jury returned a verdict for defendants. The court, among other things, instructed the jury:

"Plaintiff Mulheran was in charge of the fire department vehicle, and the driver, Oldre, was subject to his direction and command. Therefore, it is the law of this State that any act or acts of negligence of the driver in driving must be imputed by you to the plaintiff Mulheran.

\*     \*     \*     \*     \*

"If you find that one plaintiff is entitled to recover you must likewise find that the other plaintiff is entitled to recover. Or if you find that the plaintiff is not entitled to recover, then the plaintiff in either case is not entitled to recover damages."

Thereafter, motions were made by both plaintiffs for new trials, and the court, having concluded that the above instructions were erroneous, granted new trials to both of them. The main point of contention between the parties is whether the court erred in imputing the negligence of each of the plaintiffs to the other. While the court did not specifically state that the negligence of Mulheran must be imputed to the driver, Oldre, the effect of his instruction could hardly lead to any other result.

■ All parties rely to some extent upon Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649, and Id. 197 Minn. 635, 268 N. W. 418. That case was here twice, and, unfortunately, language found in the two opinions can be used to support the opposing views of the parties in this case. In that case, plaintiff was employed by Brinks Express Company as manager of one of its armored money trucks. He was injured when the truck which he managed collided with a car driven by one of the defendants. At the time of the accident, plaintiff was riding on the outside of the money truck, apparently straddling or sitting upon the left front fender, having just repaired a mechanical signal device used in making a left-hand turn. The money truck was being driven by one Bennett, also an employee of Brinks. In the first action, it was contended that the negligence of Bennett, the truck driver, if any, must be imputed to plaintiff, the manager of the truck. While we held that they were not engaged in a joint enterprise, we did say this (192 Minn. 554, 257 N. W. 652):

"* * * Whether Bennett's acts might be attributable to plaintiff because plaintiff was the manager of the truck and as such controlled Bennett's actions we cannot say. Such is a question of fact for the jury. There is some evidence to that effect at present. *If the jury finds that plaintiff had control of the operations of the car and could by virtue of his position as manager dictate to the driver when to stop and start and where to drive, etc., then the driver's negligence, if the jury finds any, is attributable to plaintiff.*" (Italics supplied.)

If we were to apply the italicized language above to the facts of this case, clearly the negligence of the driver would be imputable to Mulheran, because the evidence is conclusive that he had the right to control the car and, if he had so desired, could have directed the driver in the operation thereof. In this case, there is no jury question on that issue for the reason that there is no dispute in the evidence. However, when the Guile case reached this court after the second trial, we took a somewhat different view of the rule. The court in the second trial charged the jury, as the court did in the case now before us, that any negligence of the driver must as a matter of law be imputed to plaintiff for the reason that it appeared conclusively that plaintiff had control of the truck. With respect to the imputation of negligence, we said (197 Minn. 637, 268 N. W. 420):

"* * * Although plaintiff's general control of the driver was a very material element in determining whether plaintiff was guilty of negligence, it was not conclusive that he was chargeable with Bennett's negligence. In order to charge plaintiff with the negligence of Bennett it must be shown that the particular act alleged to have been negligent was under the plaintiff's control and that under the circumstances he was so situated that he could and should have controlled it. Only in that sense was Bennett's negligence imputable or, more properly speaking, chargeable to plaintiff."

We quote at length with approval from Handley v. Lombardi, 122 Cal. App. 22, 9 P. (2d) 867, which will be discussed hereinafter.

In view of the unsatisfactory condition in which these two decisions have left the law on this subject, a reexamination of the applicable law would seem to be in order.

In the first place, it is established by our decisions that the negligence of one in the position of the driver of the automobile involved in the case now before us is not imputable to other employees riding in or on it who have no right of control over the driver. In Ring v. Minneapolis St. Ry. Co. 173 Minn. 265, 217 N. W. 130, plaintiff was injured while riding on a fire truck going to a fire. It was there claimed that the negligence of the driver of the truck was imputable to plaintiff. We held that no joint enterprise was involved, and with re-

spect to the imputability of the negligence of the driver, we said (173 Minn. 268, 217 N. W. 131):

"Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct nor participated therein nor had the right or power to control it."

It is argued that the converse must be true and that, if a party did have the right or power to control the conduct of the driver, negligence of the driver should be imputed to him; but that is not necessarily true. A decision must be construed in the light of the issue before the court. There was no claim in the Ring case that the injured party had any right to control the conduct of the driver and for that reason—that issue not being involved—the case is not controlling here.

In discussing the question now before us, Prosser, in his treatise on Torts (2 ed.) § 54, after stating the historical origin of imputing the negligence of a driver of a vehicle to a passenger, said:

"* * * It is now held that the driver's negligence will not be imputed to the passenger, whether the transportation be in a common carrier, a hired vehicle, or a gratuitous conveyance, *unless the relation between them is such that the passenger would be vicariously liable as a defendant.*

"Such vicariously imputed negligence must be distinguished from the contributory negligence of the passenger himself." (Italics supplied.)

Substantially the same rule is adopted in Restatement, Torts, § 485, where it is stated:

"Except as stated in §§ 493 and 494,[1] a plaintiff is barred from recovery by the negligent act or omission of a third person if, but only if, the relation between them is such that the plaintiff would be liable as defendant for harm caused to others by such negligent conduct of the third person."

Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vi-

---

[1]Not involved here.

cariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another.[2]

In Porter v. Grennan Bakeries, Inc. 219 Minn. 14, 21, 16 N. W. (2d) 906, 909, we said:

"Under the doctrine of *respondeat superior,* according to the generally accepted view, vicarious liability to third persons is imposed upon the master for his servant's torts, not because the master is at fault, or because he authorized the particular act, or because the servant represents him, but because the servant is conducting the master's business, and because the social interest in the general security is best maintained by holding those who conduct enterprises in which others are employed to an absolute liability for what their servants do in the course of the enterprise. [Citing cases.] Where the doctrine of *respondeat superior* is relied on as a basis for recovery by a third person, the tortious act of the servant committed in the scope of his employment, and not the master's fault or the absence of it in hiring or retaining the servant, is the basis of liability. The master is held liable for the servant's tort."

In dealing with imputed negligence, which arises most frequently under a claim of contributory negligence barring recovery, many of our cases involve situations where a relationship exists in which the party sought to be charged with the negligence of another would be vicariously liable to an injured third party, either as master and servant,[3] principal and agent, or under the more questionable doctrine of a joint enterprise.[4] While Tschida v. Dorle, 235 Minn. 461, 51 N. W.

---

[2]See, Prosser, Torts (2 ed.) c. 12; Laski, *The Basis of Vicarious Liability,* 26 Yale L. J. 105.

[3]See, Frankle v. Twedt, 234 Minn. 42, 47 N. W. (2d) 482.

[4]See, Kokesh v. Price, 136 Minn. 304, 161 N. W. 715, 23 A. L. R. 643; Molden v. Minneapolis, St. P. & S. S. M. Ry. Co. 160 Minn. 471, 200 N. W. 740. For a discussion generally of imputed negligence based on joint enterprise, see Burdick v. Bongard, 256 Minn. 24, 96 N. W. (2d) 868.

(2d) 561, is more difficult to reconcile with the rule that negligence may be imputed to another only where there is vicarious liability, there, too, the decision is based on the finding that the parties occupied a relationship akin to that of master and servant or principal and agent.

Of the authorities found which have considered this question, practically all recent decisions reject the doctrine of imputed negligence under facts similar to those we have here. In the early case of Bofill v. New Orleans Ry. & Light Co. 135 La. 996, 66 So. 339, L. R. A. 1915C, 419, the Louisiana court held that the negligence of the driver of a police patrol wagon is imputable to an officer riding therein and having control of the wagon and driver, especially where he knew that the driver was inexperienced.[5] Apparently that is the only case so holding.[6]

Hubert v. Granzow, 131 Minn. 361, 155 N. W. 204, relied upon by defendants, is not in point. It did not deal with imputed negligence but rather with the independent negligence of the driver and passenger in a fire truck in an action brought against them for causing the death of a 4-year-old child.

Dowler v. Johnson, 225 N. Y. 39, 121 N. E. 487, 3 A. L. R. 146,[7] is frequently cited in discussing the rule of imputed negligence. In that case the defendant was the fire commissioner of the city of New York. He left the fire headquarters in one of the department's automobiles to inspect some fire houses in Brooklyn. The automobile was driven by a fireman assigned to that duty by the commissioner, and, while being so driven, it collided with another automobile, and plaintiff was injured. The complaint charged that at the time of the collision the automobile was driven under defendant's orders and at an excessive rate of speed. The trial court was of the view that, because the relationship between the defendant and the driver was not that of master and servant, no speed, however excessive, could tend to fasten upon defendant a liability for the wrong. The complaint thereupon was dismissed as against defendant, and the appeal followed. With respect to the liability of the

---

[5]See, 38 Am. Jur., Negligence, § 252.
[6]65 C. J. S., Negligence, § 168j.
[7]See, Annotation, 3 A. L. R. 149.

defendant, the court, speaking through Mr. Justice Cardozo, said (225 N. Y. 42, 121 N. E. 487, 3 A. L. R. 149):

"* * * We do not doubt the rule invoked by counsel for the defendant, and sustained by superabundant citations, that public officers are not liable for the negligence of their subordinates unless they co-operate in the act complained of, or direct or encourage it * * *. That is at least the general rule, and if it is subject to any other qualifications, they are not now material. But here the very question is whether the defendant did direct or encourage the negligent act or personally co-operate in it. Undoubtedly he is not liable for the negligence of the driver on the theory of *respondeat superior*. The relation between them was not that of master and servant. If he had been out of the car at the time of the accident, no one would suggest that he must answer for the driver's wrong. Even his presence in the car would be insufficient of itself and in all circumstances to charge him with liability. There must have been command or co-operation [citing authorities]. But ratification may be equivalent to command, and co-operation may be inferred from acquiescence where there is power to restrain. * * * There was the *right* to restrain here, for the driver was subject to the defendant's orders * * *; but the right is of no importance unless the omission to exercise it was unreasonable. We cannot say whether the inference of such an omission is legitimate till the whole story has been told. We must see the whole picture. For the purpose of this appeal, it is enough that the defendant is not exonerated as of course because the man at the helm was not his servant. One cannot let oneself be driven at breakneck speed through city streets, and charge the whole guilt upon the driver who has done one's tacit bidding."

In Handley v. Lombardi, 122 Cal. App. 22, 9 P. (2d) 867, from which we quote at length in the second opinion in Guile v. Greenberg, 197 Minn. 635, 268 N. W. 418, plaintiff was injured in a collision while riding in an automobile driven by a fellow employee. Plaintiff was the superintendent for the employer and, by his own testimony, had the authority to direct and control the driver of the truck. It was sought to impute to him the negligence of the driver of the truck, and

refusal to give instructions to the jury to that effect was assigned as error. In upholding the trial court, the California court said (122 Cal. App. 28, 9 P. [2d] 869):

"Plaintiff was not the master or principal of the driver of the truck, but only an intermediate and superior employee or agent. This being so, the doctrine of *respondeat superior* or *qui facit per alium* is not properly applicable to him. His power to direct and control the driver was not as master, but only by virtue of the fact that they were both employed by Kruse, and the further fact that as Kruse's agent he was delegated Kruse's authority over the driver. * * *

"In the case of actionable negligence, the rule is well settled both in this state and elsewhere that the negligence of a subordinate employee or subagent is not to be imputed to a superior employee or agent, but only to the master or principal. * * * We can see no logical reason for drawing any distinction in this regard between actionable negligence and contributory negligence. The fact that plaintiff had the power of control over the driver was certainly a factor to be considered with all other circumstances in determining whether he himself was personally negligent; and the jury might well find that one who had the power to control the driver would be guilty of negligence where in the same circumstances one who had no such power would not. But that is a very different matter from saying that the driver's negligence is to be imputed to the plaintiff. If any regard is to be had to making a symmetrical pattern of the law, it will not do to say that a superior employee is not to be held liable for his subordinate's negligence where a liability is sought to be imposed upon him by a third person, but is to be held liable for the subordinate's negligence where he seeks to impose a liability upon the third person.

\* \* \* \* \*

"We conclude upon this point that negligence is not to be imputed as a matter of law to a superior servant or agent, * * *."

In Vogler v. Jones, 199 Okl. 156, 186 P. (2d) 315, Casey Jones, a lieutenant in the fire department, was injured in an accident while riding in a fire truck which was then being driven by one Burns. Plaintiff testified that he was in control of the fire truck and that the

driver of the truck was subject to his control and direction. He testified in substance that the driver of the truck would stop the truck or turn it around and go back to the fire station if he gave the order. The only question under these circumstances was whether the negligence, if any, of the driver of the fire truck should be imputed to plaintiff. In rejecting the contention that such negligence was imputed, the Oklahoma court followed some of the cases we review above and concluded (199 Okl. 158, 186 P. [2d] 317):

"The plaintiff did not hire Alvin Burns; he did not pay his salary; could not promote or demote him; neither could he fire him. There was no personal relationship between the two. Both were servants and employees of the city. At the time of the accident Burns was not on a mission that would benefit the plaintiff, but rather he was in the performance of his official duties as an employee of the city. These are important distinguishing facts which do not exist in the principal and agent or master and servant cases cited by defendants. Likewise, they do not exist in the numerous cases cited by defendants where the owner of a vehicle procures another person to drive for him but retains the right to direct and control the driver.

"We decline to follow the rule urged by defendants in so far as it would impute negligence of a driver to a public employee who has charge of the vehicle and the right to control the driver.

"Whether plaintiff was negligent in not exercising his authority to control and direct the driver or whether he exercised this power in a negligent manner, was the question to be decided by the jury in determining plaintiff's responsibility for the accident."

Veek v. Tacoma Suburban Lines, Inc. 49 Wash. (2d) 584, 304 P. (2d) 700, is strikingly similar to the instant case on the facts. In that case the action was brought by the administratrix of the estate of Laurence M. Veek to recover damages for his alleged wrongful death. He died as the result of a collision between a United States government fire truck in which he was riding and a bus owned by defendant corporation. At the time of his death Veek was a civil service employee of the United States government working as a member of a fire department. He was the crew chief of a three-man crew which respond-

ed to a fire alarm. The truck was being driven by one Boag. Veek, by virtue of his position, had charge of the truck. The trial court concluded as a matter of law that the negligence of the driver was imputed to Veek and dismissed the complaint with prejudice. Upon appeal, the Washington Supreme Court reversed. In so doing, the court said (49 Wash. [2d] 591, 304 P. [2d] 704):

"It is a well recognized principle that public officers are not liable for the negligence of their subordinates in the operation of a vehicle unless they acquiesce or co-operate in the act complained of, or direct or encourage it. Dowler v. Johnson, 225 N. Y. 39, 121 N. E. 487, 3 A. L. R. 146; [citing other authorities].

"Although the right of control over the driver is not sufficient by itself to justify an application of the doctrine of vicarious liability, it is a factor to be considered with all other circumstances in determining whether the decedent was guilty of independent contributory negligence which would be a bar to recovery. In other words, the negligence, if any, of the driver would become a factor in the instant case only if the decedent failed properly to supervise or direct the driver after the decedent had a reasonable opportunity to see or to know that the driver was operating * * * the fire truck 'without due regard for the safety of others,' and whether the decedent was negligent in failing to exercise his authority, or whether he exercised it in a negligent manner, was a question of fact for the jury."

In Swanson v. McQuown, 139 Colo. 442, 340 P. (2d) 1063, a sergeant in the United States Army was injured in a collision with another automobile. The car in which plaintiff was riding was being driven by another noncommissioned officer, a corporal. It was contended that plaintiff, by virtue of his rank, had the right to control the operation of the automobile and that the negligence of the driver must therefore be imputed to him. In rejecting this contention, the Colorado court said (139 Colo. 450, 340 P. [2d] 1067):

"The general rule is that a public official is not liable for the wrongful acts of his subordinates on a vicarious basis since the relationship is not a true master-servant situation."

The court followed Dowler v. Johnson, *supra,* and Veek v. Tacoma Suburban Lines, Inc. *supra,* among other cases. It concluded by saying (139 Colo. 452, 340 P. [2d] 1068):

"We therefore hold that the facts adduced in the present case do not bring into play the doctrine of imputed negligence. The plaintiff would be barred from a recovery only if it were shown that he had been guilty of negligence in supervising the acts of subordinates, or in directing or authorizing the wrong."

It would seem, therefore, that the better rule, followed by a great majority of the courts which have considered the question, is that the negligence of the driver of an automobile is not to be imputed to a fellow employee riding with him, even though he has the right to control the manner of operation of the automobile, in the absence of a relationship which would establish vicarious liability. The right to control does have a vital bearing, however, on the determination of the independent negligence of such passenger. Failure to exercise a control which he has, when it should have been exercised, may well constitute negligence on the part of the passenger, as well as other affirmative acts or failure to act when reasonable prudence would require it. It must be kept in mind that here we are dealing in a quite limited field in the application of imputed negligence; namely, whether the negligence of the driver of an automobile is to be imputed to a fellow employee riding as a passenger therein who, by virtue of his superior position, has been given the right and authority to control the operation of the automobile. Obviously, there is no vicarious liability here attachable to Mulheran. Vicarious liability attaches whether the person chargeable is present or not. If Mulheran had not been in the automobile, no one would contend, we think, that he could be chargeable with the negligence of the driver. That being true, the bar to recovery by him against a third party must be based upon his own negligence rather than upon the negligence of Oldre, the driver of the car, imputed to him.

■ The trial court had intended to instruct the jury that at the time of the accident the fire vehicle was on an emergency run. It inadvertently failed to do so. Its attention was not called to the omission

prior to the time when the jury retired. While the instruction properly could have been given, we doubt that failure to give it, in the absence of request, of itself justified a new trial. There is no dispute in the record that at the time of the accident the vehicle was still on its way to a fire. The assistant fire chief was waiting for information as to the nature of the fire. If he had learned that it was not of great importance, he probably would have decided not to go to it, but he was still on the way at the time of the accident. However, before a fire vehicle has any greater rights than any other vehicle on the highway, compliance with certain statutory provisions must be established. The applicable provisions are:

Minn. St. 169.01, subd. 5. " 'Authorized emergency vehicle' means any of the following vehicles when equipped and identified according to law: (1) a vehicle of a fire department; * * *."

§ 169.03. "The driver of any authorized emergency vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign, shall slow down as necessary for safety, but may proceed cautiously past such red or stop sign or signal *after sounding siren and displaying red lights.*

*     *     *     *     *

*"No driver of any authorized emergency vehicle shall assume any special privilege under this chapter except when such vehicle is operated in response to any emergency call * * *."* (Italics supplied.)

§ 169.17. "The speed limitations set forth in sections 169.14 to 169.17 do not apply to authorized emergency vehicles when responding to emergency calls, but the drivers thereof shall sound audible signal by siren and display at least one lighted red light to the front. This provision does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of persons using the street, nor does it protect the driver of an authorized emergency vehicle from the consequence of a reckless disregard of the safety of others."

§ 169.20, subd. 5. "Upon the immediate approach of an authorized emergency vehicle equipped with at least one lighted lamp ex-

hibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and when the driver is giving audible signal by siren, the driver of each other vehicle shall yield the right of way and shall immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in this position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

*   *   *   *   *

"This subdivision shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of persons using the highways."

The court, in its instructions, substantially covered the statutory law with respect to the right of an emergency vehicle. If the instruction which was omitted by the court—that the fire vehicle was on an emergency run—had been given, the cautionary instruction should also have been given—that, even so, it had no greater right than another vehicle unless it was then complying with the statutory requirements by warning the traveling public by siren and light. It is not the fact that the vehicle is on an emergency run alone that gives it a privilege to enter a through highway without stopping, but the fact must be coupled with a compliance with the requisite warning that it is an emergency vehicle on an emergency run. If the jury should find that the fire vehicle entered the intersection without the requisite warning siren and lights, it would make no difference whether it was on an emergency run or not.

The only other question presented by defendants relates to the admission of the opinion evidence of their witness, a fire equipment salesman, who was permitted to state, over objection as to foundation, that he had never heard of a fire siren burning out by being sounded continuously. While there was some question as to foundation, we fail to see how the answer could have been prejudicial. This claim merits no discussion.

The effect of the court's instructions was to impute the negligence of Mulheran to the driver of the automobile as well as to impute the

negligence of the driver to Mulheran. Clearly, this was error. Inasmuch as there is no likelihood that it will be repeated on a new trial, we refrain from any discussion of this issue.

Plaintiffs claim that, in addition to the errors upon which the trial court based its order granting a new trial, they may urge any other errors that would require a new trial.[8] In view of the fact that we conclude that the trial court correctly granted a new trial for the error relating to imputed negligence, it would not be necessary to answer plaintiffs' contentions, but, inasmuch as there must be another trial, we shall briefly indicate our views respecting these also.

Plaintiffs contend that the court erred in failing to instruct on § 169.68, which governs the horns which automobiles must carry. The evidence shows that the Melin car, at the time of the accident, was not equipped with a horn which could be sounded because of the fact that it was being remodeled. Failure to have a horn under the circumstances of this case could not in any way have proximately contributed to the accident. Certainly it could not be argued that, if a horn had been sounded within the short distance in which the two automobiles were in sight of each other, it would have prevented the collision. Under these circumstances, the court correctly refused to instruct on a statutory requirement not involved in the case. We think that the same is true with respect to the muffler. Even though the jury could have found that it was noisy, there is nothing to indicate that this had anything to do with the accident.

Finally, plaintiffs contend that the court should have instructed the jury that defendants were guilty of negligence as a matter of law in entering the intersection with two wheels over the centerline after having passed another automobile. The distance from the intersection at which defendant driver passed the other car was in dispute. Even though there was a violation of the passing statute, it would constitute prima facie evidence of negligence only. Whether, under the circumstances existing in this case, there was excuse or justification for

---

[8]Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Wright v. Avenson, 174 Minn. 97, 218 N. W. 453; McAlpine v. Fidelity & Cas. Co. 134 Minn. 192, 158 N. W. 967.

being where he was presented a fact issue for the jury's determination. Under the record before us, the questions of negligence of defendants, contributory negligence of plaintiffs, and proximate cause were all jury questions.

Affirmed.