In re Marriage of Dennis Earl
**HECKER, Petitioner,
Appellant,**

v.

**Sandra K. HECKER, Respondent.**

No. CX–95–1841.

Court of Appeals of Minnesota.

Feb. 13, 1996.

Review Granted April 16, 1996.

Edward L. Winer, Susan C. Rhode, Moss & Barnett, P.A., Minneapolis, for appellant.

Michael Ormond, Ormond Law Offices, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

DAVIES, Judge.

Appellant challenges an increase in maintenance and a modification of maintenance from temporary to permanent, asserting that respondent's willful failure to rehabilitate should bar maintenance altogether. We affirm.

## FACTS

Appellant-husband Dennis Earl Hecker and respondent-wife Sandra K. Hecker married in 1973 and had two children. A May 1983 stipulated judgment dissolved the marriage and awarded respondent, among other things, $800 monthly maintenance through June 1993. In January 1986, the parties agreed to increase maintenance to $1,000 per month. In June 1987, the parties stipulated to amend the judgment to award respondent attorney fees and additional property.

In January 1993, respondent moved for permanent maintenance of $2,000 monthly. Appellant, while stipulating to his ability to pay maintenance, claimed that he should not have to pay the additional maintenance requested because respondent had not, since the dissolution, tried to rehabilitate. The district court, nonetheless, granted respondent's motion. On a first appeal, this court remanded for findings on respondent's expenses, her investment income, and her efforts to rehabilitate. *Hecker v. Hecker,* No. C8-93-2305, 1994 WL 200604 (Minn.App. May 24, 1994) (hereafter *Hecker I* ).

On remand, a vocational expert hired by appellant to examine respondent concluded that, since the dissolution, respondent had been "minimally involved in preparing for and/or pursuing a career[,]" and that if respondent had more quickly "pursued activities leading to a career path" after the dissolution, "her earning capacity would be greater than it is presently[.]" The expert's report also stated that

> [respondent could] expect starting earnings in the $16,000/year range * * * [and that] [i]t would not be unreasonable for her to find she can increase these earnings to the $25,000/year level with three years of work experience.

In a January 1995 deposition, the expert also stated that the most dramatic increases in respondent's earnings would be in the "first three to five years" after getting a job and that her earnings would "increase by inflation after that point."

After a hearing, a family court referee found that respondent "chose not to make any serious effort at obtaining vocational training or work experience * * *." The

referee ruled that, based on the expert's evidence, income of $25,000 a year should be imputed to respondent. The referee found it "doubtful" that respondent would earn "significantly" more than this amount in the future and, thus, found respondent's net monthly income (imputed, earned, and investment) to be $1,825. He awarded her permanent monthly maintenance of $1,375— the difference between this net income and her reasonable expenses (found to be $3,200, not including those expenses of the remaining minor child). The district court affirmed the referee's award and this appeal followed.

## ISSUE

I. Was it an abuse of the district court's discretion to increase respondent's maintenance award and make the award permanent, despite her willful failure to rehabilitate?

II. Was it an abuse of the district court's discretion to impute income to respondent?

## ANALYSIS

### I.

■ The decision to modify maintenance is discretionary with the district court. *Claybaugh v. Claybaugh,* 312 N.W.2d 447, 449 (Minn.1981). Maintenance awards are not altered on appeal unless the district court abused its "wide discretion." *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982).

■ To modify temporary maintenance into permanent maintenance, the moving party must show a substantial change in circumstances under Minn.Stat. § 518.64. *Katter v. Katter,* 457 N.W.2d 750, 752–53 (Minn.App.1990). If a temporary maintenance recipient tries but fails to become self-supporting during the term of a maintenance award, that failure can be a substantial change allowing a maintenance modification under Minn.Stat. § 518.64. *See id.,* 457

N.W.2d at 753–54 (where temporary maintenance recipient procured employment that was appropriate to her training and health but did not provide self-support, this court affirmed modification of temporary maintenance to permanent maintenance).

■ Appellant argues that respondent's willful failure to try to rehabilitate is different from an unsuccessful attempt to rehabilitate and should preclude her, as a matter of law, from receiving any further maintenance.

Among the several cases appellant cites is *Crampton v. Crampton,* 356 N.W.2d 768, 770 (Minn.App.1984), in which this court affirmed the district court's ruling that the wife's failure to rehabilitate "should not become [the husband's] responsibility." In this case, however, the district court awarded respondent permanent and increased maintenance, despite respondent's failure to rehabilitate. This is consistent with *Crampton* because, before setting respondent's maintenance award, the district court imputed to respondent the income that appellant's expert expected respondent to earn after three years of work experience. Thus, appellant's modified maintenance obligation is only what it would have been if respondent had in fact rehabilitated to the best of her ability. Alternatively stated, respondent's failure to rehabilitate has not become appellant's responsibility.

Also, *Crampton* is distinguishable because it was issued in 1984, before the maintenance statute was amended in 1985 to require that permanent maintenance be awarded even where there is doubt whether it is needed. 1985 Minn.Laws ch. 266, § 2, (codified at Minn.Stat. § 518.552, subd. 3 (Supp.1985)).

The remainder of the cases appellant cites do not address the impact of a maintenance recipient's willful failure to rehabilitate and, therefore, do not stand for the proposition that a willful failure to rehabilitate precludes additional maintenance as a matter of law.[1]

---

1. *See Gessner v. Gessner,* 487 N.W.2d 921, 923–24 (Minn.App.1992) (affirming modification where recipient "maximized her income"); *Maeder v. Maeder,* 480 N.W.2d 677, 680 (Minn.App. 1992) (rejecting claim that recipient refused to rehabilitate), *review denied* (Minn. March 19, 1992); *Karg v. Karg,* 418 N.W.2d 198, 202 (Minn.

App.1988) (affirming extension of temporary maintenance to permanent maintenance where recipient had "not been able" to become self-supporting); *Sand v. Sand,* 379 N.W.2d 119, 124 (Minn.1985) (affirming refusal to set aside stipulated step-reduction in permanent maintenance), *review denied* (Minn. Jan. 31, 1986).

*See Nadeau v. Melin,* 260 Minn. 369, 375, 110 N.W.2d 29, 34 (1961) ("[a] decision must be construed in the light of the issue before the court").

■ Appellant claims the district court's finding that respondent willfully failed to rehabilitate is inconsistent with—and precludes—a finding of the changed circumstances necessary to allow the district court to modify maintenance. *See* Minn.Stat. § 518.64, subd. 2 (1994) (maintenance modification requires changed circumstances). But, even if the district court erred in not requiring respondent to try to rehabilitate, appellant's maintenance obligation is the same as it would have been if respondent had rehabilitated. Therefore, any error is nonprejudicial. *See* Minn.R.Civ.P. 61 (harmless error to be ignored).

■ Appellant also claims that the parties' stipulated agreements for temporary maintenance weigh against allowing a permanent maintenance award here. But a stipulation does not preclude modification of maintenance upon a proper showing. *Sand,* 379 N.W.2d at 125. Here, the district court found that even if respondent had rehabilitated to the best of her ability she would be $1,375 short of meeting her reasonable monthly expenses. The district court also found that it was "doubtful" that respondent's income would increase significantly. As discussed below, the finding of respondent's net monthly income is not clearly erroneous. Further, the finding of respondent's expenses is not challenged. Thus, even with imputed income, respondent is not self-supporting and her failure to become self-supporting is a change of circumstance allowing a maintenance modification. *Katter,* 457 N.W.2d at 753.

## II.

■ On this record, the $25,000 income imputed to respondent reflects most, if not all, of the increases in respondent's future earnings that would have occurred if she had rehabilitated. It was proper to impute income to respondent to reflect her willful failure to rehabilitate. *See* Minn.Stat. § 518.552, subd. 2(a) (1994) (maintenance award to be made in light of "the financial resources of the party seeking maintenance, including * * * the party's *ability* to meet needs independently") (emphasis added).

■ The district court found it "doubtful" that respondent would earn "significantly" more than $25,000 in the future. Appellant argues that this finding is unsupported because his expert stated that respondent's voluntary absence from the workplace directly decreased her earnings.

Appellant's expert stated that respondent could earn about $16,000 initially and that the most dramatic increases in her income would be in the first three to five years after starting her career path, with increases only for inflation thereafter. The district court's finding regarding respondent's potential future income is not inconsistent with this evidence and not made clearly erroneous by it. *See* Minn.R.Civ.P. 52.01 (district court findings of fact not set aside unless clearly erroneous).

## III.

■ Appellant claims that the district court erred by overemphasizing respondent's rehabilitation efforts and ignoring other maintenance factors listed in Minn.Stat. § 518.552, subd. 2 (1994). *Hecker I* remanded for findings on respondent's financial needs, her investment income, and her efforts to rehabilitate. To the extent appellant is claiming that the district court erred by not addressing other factors, he is claiming that the district court erred by not exceeding the scope of the remand. We reject that claim. *See Halverson v. Village of Deerwood,* 322 N.W.2d 761, 766 (Minn.1982) (on remand, trial court must "execute [a reviewing court's] mandate strictly according to its terms" and lacks power to "alter, amend, or modify [that] mandate").

Respondent's request for attorney fees on appeal is denied, as is appellant's motion to strike.[2]

2. Because the critical facts in the contested portion of respondent's brief are supported by documents in the record, we deny appellant's motion to strike part of respondent's statement of the

## DECISION

A maintenance recipient's willful failure to rehabilitate does not automatically preclude the recipient from receiving permanent maintenance. Here, the district court did not abuse its discretion by awarding respondent an amount of maintenance equal to the difference between respondent's reasonable monthly expenses and the net income respondent would have made if she had rehabilitated to the best of her ability.

**Affirmed.**

facts. *See* Minn.R.Civ.App.P. 110.01 (documents filed in the district court constitute the record on appeal). Also, we decline to strike the portions of respondent's statement of the facts that lack cites to the record. *Cf. Anderson v. Standard Oil Co.*, 204 Minn. 337, 342–43, 283 N.W. 571, 573 (Minn.1939) (lack of cite to record to support assertion "weaken[ed] plaintiff's claim" but claim not stricken). We note, however, that material assertions of fact in a brief properly are to be supported by a cite to the record, and such cites are particularly important where, as here, the record is extensive. *See* Minn.R.Civ.App.P. 128.02, subd. 2; 128.03.