## No. 16,455.

St. Lukes Hospital Association et al *v.* Long et al.

(240 P. [2d] 917)

Decided January 21, 1952.

26

Messrs. BANCROFT, BLOOD & LAWS, Mr. MARTIN J. HARRINGTON, for plaintiffs in error.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Mr. WALTER F. O'BRIEN, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

DEFENDANTS in error brought suit on account of injuries resulting in the death of their three-year-old son David while at the hospital of defendant association, alleging that the injuries resulted from negligently maintaining a bed and negligently failing to provide nurses or other attendants to prevent injury to the child.

The evidence discloses that David was a paying patient at the hospital, where he was taken for the purpose of removal of tonsils and adenoids. The operation was performed at approximately ten o'clock a.m., and the child was placed in an adult size hospital bed. The mother testified that she told the nurse in substance that she had her boy in a crib at home and that he couldn't sleep in the bed supplied as his tossing and turning would make him fall; that the nurse said she would see what they could do about it, and later an orderly came and provided standard side rails which were put up on each side of the bed. The space between the upright metal rods of the side rails was four and five-eighths inches. The operating surgeon, who was employed by the parents, last visited David at about six o'clock p. m. and found him restless, with a temperature of ninety-nine degrees. The nurse on that hospital floor visited him shortly after she went on duty at eleven o'clock p. m. and knew his temperature was slightly above normal. She testified that she saw him around four o'clock a. m., and when she next went to his room around five o'clock she found him dead, with his body slipped through the rails of the bed and his head caught between them, so that he had strangled. The assistant medical

examiner of the city was called as a witness and testified that at the time he saw the boy he had been dead from fifteen minutes to a half hour. He and the hospital superintendent experimented with the body to see how the boy could get between the rods of the side rail, and found that by turning the body on the side and depressing the chest slightly it went through. Judgment was entered on verdict against both defendants in the sum of $5,000.

As grounds for reversal defendants contend first, that the Royal Indemnity Company was not a proper party defendant. Plaintiffs insist that it was necessary to join the indemnity company under authority of *Brown v. St. Luke's Hospital Ass'n,* 85 Colo. 167, 274 Pac. 740, wherein our court said, adhering to our ruling in *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22, that, "Where the testimony affirmatively discloses a charitable trust, and a judgment against said trust, if satisfied, will deplete the trust fund, under such circumstances, a plaintiff cannot maintain an action against such a defendant." Assuming this contention of limited liability is correct, the insurer or indemnitor would not be a necessary party, at least where the fact of indemnity is admitted. But counsel misconstrue our holding as to such liability. We said in the St. Mary's Academy case: "We hold that a charitable trust fund may not be depleted by the tort of the trustee but it does not logically follow that no judgment can be rendered against him. He may be liable and yet the trust fund not." And we said in the Brown case, quoting from St. Mary's Academy case: "We think that the judgment against these corporations is valid, but that no property which they hold in charitable trust can be taken under execution upon it * * *." In *O'Connor v. Boulder Association,* 105 Colo. 259, 96 P. (2d) 835, we further said, with reference to the St. Mary's Academy case, supra, "In reviewing the judgment we committed ourselves to what may be denominated the trust-fund doctrine, and

held that the trust-fund rule does not bar an action against a charitable institution based on the tort of its agents, but that it does prohibit the levying of an execution under a judgment procured against it in such a suit on any property which is a part of the charitable trust." We think that is the proper interpretation of the rule adopted in this state and agree with the statement in *McLeod v. St. Thomas Hospital,* 170 Tenn. 423, 95 S.W. (2d) 917, Anno. 145 A.L.R. at page 1341: "Upon consideration of the cases dealing with the question, and reflecting upon the true principle involved, we think it fairly may be said that the exemption and protection afforded to a charitable institution is not immunity from suit, not nonliability for a tort, but that the protection actually given is to the trust funds themselves. It is a recognition that such funds cannot be seized upon by execution, nor appropriated to the satisfaction of a tort liability. And certainly it is no defense to a tort action, that the defendant has no property subject to execution."

█ The action was first instituted against the hospital association alone and plaintiffs in their complaint unnecessarily alleged on information and belief that a judgment awarded in the case would not result in any depletion of trust funds held by the defendant for the purpose of a charitable trust, for the reason that the defendant corporation was insured under a contract which would indemnify it in the amount of any judgment rendered. Thereafter plaintiffs amended said complaint by joining Royal Indemnity Company as a party defendant and further alleging that said defendant was the insurer of the hospital association under a contract which would indemnify the latter in the amount of any judgment rendered. After answer filed in behalf of both defendants denying the essential allegations of liability, defendants admitted at pre-trial conference the allegation of indemnity as contained in the original complaint, but the record fails to show any motion for dismissal in behalf of the indemnity company or of any allegation in

its behalf in the answer of failure to state a claim against it upon which relief could be granted; accordingly, it does not appear that the trial court was called upon to dismiss as to the indemnity company and the question of misjoinder cannot now be raised.

It next is urged that there was failure to prove negligence as alleged. Although defendant St. Lukes Hospital Association is a charitable hospital, in this jurisdiction it was liable under the general rules applicable to private hospitals. Such hospitals are not insurers of patients' safety, but are obligated to use reasonable care and diligence in safeguarding patients submitted to their charge. Such care and diligence are measured by the capacity of the patient to care for himself. By reason of his age, a higher degree of care was required in attending a child such as here involved than if he had been an adult. *Rice v. California Lutheran Hospital,* 27 Cal. (2d) 296, 163 P. (2d) 860.

The cause of death in the instant case is not disputed. There is little conflict in the evidence, but, "Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury." *McStay v. Citizens Nat. Bank,* 5 Cal. App. (2d) 595, 43 P. (2d) 560. See, also, *Neel v. Mannings, Inc.,* 19 Cal. (2d) 647, 122 P. (2d) 576. Under the evidence before the court, whether the hospital through its agents was sufficiently advised as to the size of the patient to be placed on the bed, or whether the responsibility for use of the bed was assumed by the physician in charge was a question for the jury. Whether death or accident from the furnishing of such an adult size bed for use of a child as small as David should reasonably have been anticipated and guarded against was a question of fact for the jury. Whether in view of the age of the patient and his natural distress and restlessness following the operation, reasonable care required more frequent attention than was here shown, and whether such attention would have prevented the tragic accident,

was a question for the jury. We cannot say as a matter of law that the evidence was not sufficient to establish the negligence of defendant hospital association as found by the jury.

We are not concerned whether a nurse, in treating a patient professionally, is acting as a servant of the hospital. The nurse here was not a private nurse employed by the parents, but was furnished by the hospital, and at least, except when performing professional services or obeying instructions of a physician, served as a hospital employee. The issues here do not concern her acts in a professional capacity in treating a patient, but rather administrative acts and omissions in carrying out the obligations of the hospital as to furnishing adequate equipment and bestowing adequate attention to the needs of the child. Neither professional skill nor professional care was involved therein.

■ The third challenge is to the instruction of the court applying the doctrine of res ipsa loquitur. Plaintiffs were unable to testify as to the actual cause of death. Defendants by their broad denial would have made applicable the rule of res ipsa had no specific proof as to cause of death been produced. *Meyer v. McNutt Hospital,* 173 Calif. 156, 159 Pac. 436. However, the nurse who was on duty on this hospital floor, and who first found and removed David's body, testified positively as to the cause of death. Her testimony was corroborated by physicians who examined the body and was not challenged. By such affirmative evidence the defendant explained and made known the cause of the death and disclosed all its knowledge and means of information as to the accident. The plaintiffs thereafter had equal knowledge and means of information and the res ipsa doctrine could no longer be invoked. The court erred in giving the instruction over defendants' objection. *Yellow Cab Company v. Hodgson,* 91 Colo. 365, 14 P. (2d) 1081; *Boulder Valley Coal Company v. Jernberg,*

118 Colo. 486, 197 P. (2d) 155; *Zimmerman v. Franzen,* 121 Colo. 574, 220 P. (2d) 344.

▇ The fourth challenge goes to the action of the trial court in permitting Dr. Kingry, a pathologist, to read in evidence his long autopsy report based on an examination of David's body. The court properly ruled that the witness could testify as to the cause of death, but improperly permitted him to read his written report and improperly permitted him to testify as to the irrelevant and prejudicial matters therein. In case of retrial, this should not be permitted.

▇ Error is predicated again on receipt in evidence as an exhibit of a picture of David's body, taken two days after the death, showing the incisions and sutures made in performing autopsies on the body. The only purpose of the exhibit, apparent or urged, was to show a mark on the lower cheek which could have resulted from the catching of the head between the rods of the side rail. As we held in *Potts v. People,* 114 Colo. 253, 158 P. (2d) 739, "Ordinarily photographs are competent evidence of anything which it is competent for a witness to describe in words. [Citing cases.] Their admissibility does not depend upon whether the objects they portray could be described in words, but on whether it would be helpful to permit the witness to supplement his description by their use." Here, the cause of death was so firmly established without dispute that there could be no substantial testimonial value in the picture. Had it been that of the head alone, showing merely the bruise, it might have been admissible, but the showing of the disfiguration of the body by the autopsies is pitiful and distressing and irrelevant to the issues. In case of retrial the entire photograph should not be received.

▇▇ Again, it is urged that the trial court erred in its instruction on damages which was as follows: "The Court instructs the jury that in the event you find for the plaintiffs from a preponderance of the evidence, you will assess the damages at a sum equal to the pecuniary

benefit which they might reasonably expect, from the evidence in the case, to receive from their child in case his life had not been terminated by the alleged wrongful act, neglect or default of the defendant. The damages awarded may be approximated by considering his age, health, habits, conditions in life, of industry or otherwise, the future ability to earn money on the part of the deceased, including his disposition to aid or assist the plaintiffs. Such damages recoverable by the parents for the death of their child, or such sum as will fairly and reasonably compensate them for any financial loss caused by the death of the child, are to be measured by such sum as the evidence would tend to show would have been received by them had the child continued to live, taking into consideration the child's disposition and ability to contribute to the parents' wants and necessities during their probable duration of life. You may also allow damages for such sum as the plaintiffs have become obligated to pay, or have paid, for the funeral and burial expenses of the child, but in no event shall the total amount of damages fixed by you exceed the sum of $5,000." The objection is based solely upon the ground that there was no evidence in its support other than mortuary and cemetery bills. There was testimony that the boy was in good health and the court sustained objection of defendant to further evidence along that line. It is impossible to establish with any definiteness or certainty the future earning ability of a three-year-old boy or his future generosity toward his parents. To hold that no recovery could be had in the absence of such showing would be in effect to abolish the right to recovery by parents of young children and such was not, we think, the legislative intent in the enactment of the statute. As our Court said in *Kansas Pacific Ry. Co. v. Lundin, Admr.*, 3 Colo. 94: "As a matter of sentiment, life has no pecuniary value, but considered with reference to the relations of deceased with others, it is capable of such estimate. In this sense a parent is entitled to the services of children

during their minority, and to support and maintenance from them in his declining years." The age and health of the child were known and the jury saw the parents. The objection to the instruction was not well taken.

Finally, it is urged that the court erred in overruling motions for judgment in behalf of the hospital association and the indemnity company. Such motion in behalf of the hospital association was properly overruled. The motion in behalf of the indemnity company should have been granted. There is no word of evidence in the record regarding the indemnity company, nor is our attention called to its being mentioned therein. It certainly was not a joint tort-feasor and was not liable by virtue of negligence of any of its officers, agents or employees. There is no testimony whatever that it was an indemnitor and no admission of that fact. There was nothing in either pleadings or evidence upon which its liability could be predicated. The motion in behalf of the indemnity company should have been sustained.

The judgment is reversed and the cause remanded with instructions to enter judgment of dismissal as to defendant Royal Indemnity Company and to proceed as to defendant St. Lukes Hospital Association in harmony herewith.