JOSÉ ORTIZ FUENTES, Plaintiff and Appellee, *v.* PRESBYTERIAN HOSPITAL IN THE CITY OF SAN JUAN ET AL., Defendants and Appellants.

No. 12283.   Decided August 4, 1961.

*Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco,* and *Hernán G. Pesquera* for defendants-appellants. *Francisco Ponsa Feliú* and *Álvaro R. Calderón, Jr.,* for plaintiff-appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

PER CURIAM.

José Ortiz Fuentes sued the corporation which operates the Presbyterian Hospital in San Juan.  His cause of action was based on the following facts.  He was confined in that institution for the purpose of undergoing an operation for bilateral cataract in the left eye.  He paid for the hospital services.  At the time of the occurrence on which the action is predicated he was 64 years of age.  He was practically blind in both eyes although he could see better out of the right eye, and was almost deaf.  He was operated on November 16.  The evening of the 17th day he was restless and could not sleep.  On the 18th and 19th he slept well and seemed quiet.  In the morning of the 20th he was talking nonsense and said he wanted to go to church.  That same day he was moved to another room at his request.  In the new room there was only one bed and one window overlooking the interior patio.  One of the nurses on duty saw him at 3:30 p.m. of the 20th day lying in bed, quiet, and apparently asleep. At 7:00 p.m. she saw him again seated on the armchair in his

room. He seemed quiet but talking nonsense. At 8:20 the Afternoon Supervisor, Margarita Rivera Texidor, witness for the defendant, saw him seated on the armchair of his room. At 8:30 nurse Renee Meléndez Rivera, witness for the defendant, found him standing at the door and stopped to talk him and asked him if he wished anything, and he insisted that he wanted to go to church, but she persuaded him to go inside and to sit down. When the nurse entered the room she noticed a pool of water under the washstand and went out to fetch the orderly to clean the floor. Referring to this time of the day, the plaintiff testified that shortly before the accident and while he was seated he heard a woman's voice who said, "Don José, lie down"; that shortly after hearing the voice he got up, saw two beds, lay down, and as he turned over he fell out of the window. In the meantime the orderly whom the nurse ordered to clean the pool of water went into the room and the patient was not there. At 8:40 the nurse went back to the room and did not find the patient either on the armchair or in bed. On her way to the private section she saw in the hall a patient being carried on a stretcher. When she approached the supervisor in order to inform her of the disappearance of the plaintiff, she noticed that the patient being carried on the stretcher was José Ortiz Fuentes. In the clinical history that is kept for every patient there is an entry to the effect that at 7:00 p.m. of the 20th day patient "doesn't look normal, talking nonsenses." The entry at 8:30 reads "patient insists he wants to go to church, walking around without excitement." At 8:40 there is an entry which reads, "patient not at room; orderly was cleaning the floor and he heard some person talking down in the patio." On the day of the accident the patient had no visitors. On the basis of these facts the trial judge sustained the complaint, and in support of his conclusion he states the following:

"1. The nurse of the Presbyterian Hospital who told the plaintiff to lie down, leaving him alone in the room without

aiding him to do so as required by his condition as a patient, was negligent. The said nurse could have reasonably foreseen that after telling the patient to lie he could attempt to do so without asking for aid—because he was mentally confused or mixed up—and fall upon suffering some error of perception attributable to the fact that he had been recently operated on one eye, practically blind in the other, and almost deaf. Annotations, 22 A.L.R. 341, 39 A.L.R. 1431, 124 A.L.R. 186; *Saint Luke Hospital Association* v. *Long,* 125 Colo. 25, 240 P.2d 917, 31 A.L.R.2d 1120."

In explaining the conclusion copied above the judge points out in footnote 7 appearing in the "Findings of Fact, Conclusions of Law, and Judgment" that "the plaintiff did not expressly say that the one who entered the room was one of the nurses, but that he heard a woman's voice; but it is reasonable to conclude, particularly in the absence of evidence to the contrary offered by the defendants, that she was one of the nurses who passed by the room after the nurse referred to in finding No. 5 "left the plaintiff seated on the armchair."

Let us examine the evidence. At 8:20 p.m. the Afternoon Supervisor finds the patient seated on the armchair of the room. Ten minutes later the nurse in charge of the patient testifies that he was standing at the door of the room. She persuades him to sit down and to go inside the room. When she entered she noticed a pool of water underneath the washstand. She went out to fetch an orderly to clean it, and before the orderly arrived the plaintiff had already fallen. Let us recall that at 8:30 the nurse found him standing at the door, and that she returned to the room at 8:40 and found that the patient has fallen; the orderly has already cleaned the pool of water, and that when he arrived he did not find the patient in the room. The patient asserted that he heard the voice when he was seated on the armchair shortly after sitting down. We also know that the patient had no visitors that night. All of this happened in less than 10 minutes. It is reasonable to conclude that before going out to fetch the orderly and it being 8:30 p.m., nurse Renee Meléndez Rivera

told the patient to lie down knowing as she did that he was restless, having found him shortly before standing at the door of the room and insisting that he wanted to go to church.

The foregoing would be sufficient to dispose of the appeal, since the defendants' case rests exclusively on the error allegedly committed by the trial court in assuming that the voice heard by the plaintiff was that of a nurse and that she was in the discharge of her duties. Yet, defendants' liability arises independently of whether a nurse in the discharge of her employment had said to the plaintiff "Don José, lie down." The liability arises from the facts as found proved by the trial court. In the eighth finding of fact the trial court says: "But since the postoperative condition of the plaintiff was normal, there is no question that he was mentally confused or mixed up and that he was suffering from errors of perception attributable to the fact that he had recently undergone an operation, was practically blind in the other eye and was almost deaf. Although his condition did not require constant attention, he had to be aided in order to eat, lie down and get up, and to attend to his physiological needs." The hospital was aware of this entire situation, since the nurses who attended the patient set it down on the daily record kept.

In *Hernández* v. *The Capital*, 81 P.R.R. 998 (1960) we made an exposition of the liability of hospitals to patients in those cases in which the necessary protection, vigilance, and care is not offered. Applying that holding to the circumstances of the case at bar, the defendants' liability appears clearly. See, also, *Batista* v. *Juliá Hospital*, 71 P.R.R. 770 (1950); *Roses* v. *Juliá*, 67 P.R.R. 485 (1947); Harbison, *The Standard of Care Owed by a Hospital to Its Patients,* 2 Vand. L. Rev. 660 (1949). *Cf. Carrasquillo* v. *Am. Missionary Association*, 61 P.R.R. 837 (1943).

The judgment appealed from will be affirmed.