JOSÉ ORTIZ FUENTES, demandante y apelado, *v.* PRESBYTERIAN HOSPITAL IN THE CITY OF SAN JUAN ET AL., demandadas y apelantes.

Número: 12283.  Resuelto: 4 de agosto de 1961.

*Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco y Hernán G. Pesquera,* abogados de las demandadas apelantes; *Francisco Ponsa Feliú* y *Alvaro R. Calderón, Jr.,* abogados del demandante-apelado.

Sala integrada por el Juez Asociado señor Pérez Pimentel, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

PER CURIAM:  José Ortiz Fuentes demandó a la corporación que opera el Hospital Presbiteriano en San Juan. Basó su causa de acción en los siguientes hechos.  Ingresó en la referida institución con cataratas bilaterales para ope-

rarse el ojo izquierdo. Pagaba por los servicios que le rindió el Hospital. A la fecha de los hechos en los cuales funda su acción tenía 64 años de edad. Estaba prácticamente ciego de ambos ojos aunque veía mejor por el derecho y era casi sordo. Fue operado el 16 de un mes de noviembre. Pasó la noche del 17 intranquilo y sin poder dormir. El 18 así como el 19 durmió bien y parecía tranquilo. En la mañana del 20 hablaba disparates y decía que quería ir a la iglesia. Ese mismo día 20 fue trasladado a otra habitación a petición suya. En la nueva habitación sólo había una cama y tenía una ventana que daba al patio interior. Una de las enfermeras de guardia lo vio a las 3:30 de la tarde del día 20, acostado en la cama, tranquilo y aparentemente dormido. A las 7:00 de la noche volvió a verlo sentado en la butaca que había en la habitación. Demostraba estar tranquilo pero disparataba. A las 8:20 lo vio la Supervisora de la Tarde, Margarita Rivera de Texidor, testigo de la demandada, y estaba sentado en la butaca de su habitación. A las 8:30 la enfermera Renee Meléndez de Rivera, testigo de la demandada, lo encontró de pie en la puerta y se detuvo a hablar con él preguntándole que qué deseaba e insistía en que quería ir a la iglesia pero lo persuadió a que entrara en su habitación y se sentara. Cuando la enfermera entró en la habitación notó que había un charco de agua debajo del lavamanos y salió tras el ordenanza para que fuera a secar el agua. Refiriéndose a este momento del día el demandante declara que poco antes del accidente y mientras estaba sentado oyó una voz de mujer que le dijo "don José acuéstese" que al rato de oir la voz se levantó vio dos camas, se acostó y al virarse se cayó por la ventana. Mientras tanto el ordenanza a quien la enfermera dio instrucciones para que secara el charco de agua, fue a la habitación y cuando llegó el paciente no estaba. A las 8:40 ya la enfermera de vuelta en la habitación no encontró al paciente ni en la butaca ni en la cama. Cuando iba hacia la oficina del privado en el pasillo, vio que traían

un paciente en la camilla. Se acercó a la Supervisora para informarle la desaparición del demandante cuando se encontró que el paciente que traían en la camilla era don José Ortiz Fuentes. En el historial clínico que se lleva para cada paciente aparece una entrada en el sentido de que a las 7:00 de la noche del día 20 el paciente "doesn't look normal, talking nonsenses". La entrada de las 8:30 revela que "patient insists he want to go to church, walking around without excitement". A las 8:40 hay una entrada al efecto de que "patient not at room orderly was cleaning the floor and heard some person talking down in patio." El día del accidente el paciente no recibió visitas. Con estos hechos el juez de instancia declaró con lugar la demanda y expresa para sostener su conclusión lo siguiente:

"1. Incurrió en negligencia la enfermera del Hospital Presbiteriano que le dijo ál demandante que se acostara dejándolo solo en la habitación que ocupaba sin prestarle ayuda para ello según lo requería la condición del paciente. Dicha enfermera pudo razonablemente prever que después que ella le dijo al paciente que se acostara, él podía intentarlo sin pedir ayuda—debido a que estaba mentalmente confundido o desorientado—y caerse al sufrir algún error de percepción atribuible a que estaba recién operado de un ojo, prácticamente ciego del otro y casi sordo. Anotaciones, 22 A.L.R. 341, 39 A.L.R. 1431, 124 A.L.R. 186; Saint Luk'e Hospital Association v. Long, 125 Colo. 25, 240 P.2d 917, 31 A.L.R.2d, 1120."

Para explicar la conclusión transcrita, el juez apunta en el escolio 7 que aparece en las "Conclusiones de Hecho, Conclusiones de Derecho y Sentencia" que "el demandante no declaró expresamente que quien entrara en la habitación fuera una de las enfermeras, sino que oyó una voz de mujer; pero es razonable concluir, sobre todo a falta de prueba en contrario presentada por las demandadas, que se trataba de una de las enfermeras que pasó por la habitación después que la enfermera a que se refiere la conclusión número 5 "dejó al demandante sentado en la butaca."

Examinemos la evidencia presentada. A las 8:20 de la noche la Supervisora de la Tarde, encuentra al paciente sentado en la butaca de la habitación. Diez minutos después la enfermera a cargo del paciente declara que éste estaba de pie en la puerta de la habitación. Lo convence para que se siente y entre en la habitación. Cuando entró notó un charco de agua debajo del lavamanos. Salió a buscar un ordenanza para que lo secara y antes de que el ordenanza llegara ya el demandante se había caído. Recordemos que fue a las 8:30 que la enfermera lo encontró de pie en la puerta y que a las 8:40 es cuando regresa la enfermera a la habitación y encuentra que el paciente se ha caído, el ordenanza ya ha secado el charco de agua y que cuando éste llegó a la habitación no encontró al paciente. El paciente afirmó que oyó la voz cuando estaba sentado en la butaca al poco rato de haberse sentado. Sabemos, además que esa noche el paciente no recibió visitas. Todo esto ha ocurrido en menos de diez minutos. Es razonable concluir, que la enfermera Renee Meléndez de Rivera antes de ir a buscar al ordenanza y siendo las 8:30 de la noche, le dijera al paciente que se acostara ya que ella tenía conocimiento de su intranquilidad, pues lo había encontrado momentos antes parado en la puerta de la habitación insistiendo en que quería ir a la iglesia.

Con lo que queda dicho bastaría para resolver el recurso interpuesto pues las demandadas predican su caso exclusivamente en el error que alegan cometió el tribunal sentenciador en hacer la inferencia de que la voz que oyó el demandante fue la de una enfermera y que ésta estaba en el ejercicio de las funciones de su cargo. Pero la responsabilidad de las demandadas, surge independientemente de que una enfermera en las funciones de su empleo le hubiera dicho al reclamante "don José acuéstese". La responsabilidad surge de los hechos tal como los dio por probados la corte a quo. En la octava de las conclusiones de hecho dice el tribunal sentenciador: "Pero si bien la condición postoperatoria del demandante era

normal, no hay duda que estaba mentalmente confundido o desorientado y que sufría errores de percepción atribuibles a que estaba recién operado, prácticamente ciego del otro ojo y casi sordo. Aunque su condición no requería atención constante, necesitaba ayuda para comer, para acostarse y levantarse y para hacer sus necesidades fisiológicas". Toda esta situación era de conocimiento del Hospital ya que las enfermeras que atendían al demandante lo hacían constar en el récord diario que se llevaba.

En *Hernández* v. *La Capital*, 81 D.P.R. 1031 (1960) hicimos una exposición de la responsabilidad que tienen los hospitales para con los pacientes en aquellos casos en que no se le ofrece la protección, vigilancia y cuidado necesarios. Aplicando lo allí resuelto a las circunstancias del caso de autos surge clara la responsabilidad de las demandadas. Véase además *Batista* v. *Clínica Juliá*, 71 D.P.R. 823 (1950); *Roses* v. *Juliá*, 67 D.P.R. 518 (1947); Harbinson, *The Standard of Care Owed by a Hospital to Its Patients*, 2 Vand. L. Rev. 660 (1949). Cf. *Carrasquillo* v. *Am. Missionery Association*, 61 D.P.R. 867 (1943).

*Procede la confirmación de la sentencia apelada.*