CC-2000-1065                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Janet Colón González y otros<br>        Peticionarios<br><br>              v.<br><br>Tienda KMART y otros<br>        Recurridos | Certiorari<br><br>2001 TSPR 95<br><br>154 DPR _____ |

Número del Caso: CC-2000-1065


Fecha: 26/junio/2001


Tribunal de Circuito de Apelaciones:
                              Circuito Regional VI


Juez Ponente:
                    Hon. Rafael Martínez Torres


Abogado de la Parte Peticionaria:
                    Lcdo. Alberto J. Clavell Santiago

Abogados de la Parte Recurrida:
                    Lcdo. Eduardo A. Vera Ramírez
                    Lcda. Carmen I. Amy

Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Janet Colón González y otros

   Peticionarios

        v.

                               CC-2000-1065

Tienda KMART y otros

   Recurridos


Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río


San Juan, Puerto Rico, a 26 de junio de 2001.

I

El 19 de diciembre de 1996, en plena época navideña, la peticionaria, Janet González Colón (en adelante, peticionaria), visitó con su hijo, su hermana Norma, su hermano y sus progenitores, la tienda Kmart (en adelante, Kmart) localizada en el municipio de Cayey. Mientras la peticionaria pasaba por un corredor entre dos (2) estantes en el área de la mercancía de deportes, una caja llena de mercancía inesperadamente le cayó encima, golpeándola en el hombro izquierdo. El impacto de la caja provocó que ésta se desplomara de espaldas encima de la mercancía deportiva colocada en uno de

los anaqueles. Al caer, los bates de pelota que se encontraban en el anaquel también le cayeron encima. A consecuencia sufrió hematomas en la cabeza y en la parte baja de su espalda al golpearse con la orilla de la base del anaquel. La caja impactó, además, un carrito de compras que estaba ubicado en el pasillo, con mercancía de la tienda. Éste se viró e impactó fuertemente a la peticionaria en su piernas, específicamente en el área de la rodilla y los muslos. Como resultado del accidente, quedó inconsciente, tirada en el suelo. Instintivamente, su padre y hermana acudieron a auxiliarla. Pasados unos minutos, su padre la levantó del suelo y la cargó hacia un área privada de la tienda guiado por un empleado.

El 9 de diciembre de 1997, la peticionaria, su esposo y la sociedad legal de gananciales compuesta por ambos, presentaron demanda contra Kmart, reclamando compensación por los daños y perjuicios sufridos a consecuencia del accidente.

Según la determinación de hechos del Tribunal de Primera Instancia (TPI), el día del trágico accidente, el pasillo aledaño al área de deportes por donde pasó la peticionaria, se encontraba, en ese momento, dividido en dos (2) corredores más estrechos. Ello, debido a que el personal de la tienda había colocado unas cajas, en estibas, en el medio de éste. La prueba ofrecida en juicio demostró que las referidas cajas medían de dos a tres pies de altura cada una, y en algunos sitios habían hasta tres cajas puestas una encima de la otra, las cuales, en conjunto, sobrepasaban la estatura de la peticionaria.

El día del accidente, la peticionaria recibió tratamiento en el Hospital Menonita de Aibonito, por el Dr. Manuel Colón. También la examinaron otros médicos. El Dr. Juan Rodríguez Colón, ortopeda, ha estado atendiendo a la peticionaria desde el 31 de mayo de 1997 hasta el presente.

A consecuencia del accidente, la peticionaria sufrió intenso dolor en sus piernas, la espalda y cabeza. Estos padecimientos se prolongaron por aproximadamente tres meses luego del incidente. Sin embargo, ha continuado experimentando intensos dolores e hinchazón en la rodilla izquierda. Además, continuamente le aparecen hematomas en dicha rodilla.[1]

Los peritos de las partes, el Dr. Rodríguez Colón y Dr. Juan Llompart, ambos ortopedas, coincidieron en que la condición de la peticionaria surgió a consecuencia del trauma sufrido por ésta en la tienda Kmart. Coinciden además en que la condición es crónica e incapacitante. El perito de la parte demandada, el Dr. Llompart, concluyó en su informe que la peticionaria tiene un diez por ciento (10%) de incapacidad permanente de su pierna izquierda, lo que equivale al cuatro por ciento (4%) de sus funciones fisiológicas generales.

---

[1] Determinaciones de Hecho del TPI, núm. 14, Apéndice, pág. 40.

Durante el mes de octubre de 1998 la peticionaria intentó trabajar en un concesionario de comida rápida y en una compañía de teléfonos celulares. Sin embargo, tuvo que abandonar estos empleos a causa del intenso dolor que sufría y la hinchazón en su pierna izquierda. Por otra parte, el TPI concluyó que previo al accidente, la peticionaria se desempeñaba como técnico de uñas, y que por esas labores recibía un ingreso aproximado de $300.00 mensuales. Concluyó, además, que en total, ésta sufrió una pérdida de ingresos que a la fecha del juicio sumaba $5,200.00.

Además, quedó probado en el juicio que, a consecuencia del accidente, la peticionaria sufrió una disminución drástica en sus actividades cotidianas, a tal punto que se vio imposibilitada de jugar con su hijo como antes solía hacerlo. Dejó también de disfrutar una vida activa junto a su esposo. Inclusive, su esposo testificó en el juicio acerca de la angustia que ello le causa a la peticionaria.

El TPI dictó sentencia declarando con lugar la demanda. El tribunal **concluyó que Kmart incumplió con su deber jurídico de proveer un lugar seguro para que la peticionaria realizara sus compras. Determinó que Kmart creó una condición peligrosa al situar cajas de 2 a 3 pies de alto, cada una, precisamente en el área destinada para el tránsito de clientes —es decir, el corredor entre los estantes de mercancía del piso—, con mercancía dentro de éstas, y sin haber tomado las medidas necesarias para evitar que se cayeran, ya sea por acción de otras personas o por su propio peso.**[2] Indicó que el incidente acaecido era claramente previsible. Por tanto, le impuso responsabilidad a Kmart al amparo del artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141.[3]

---

[2] El foro de instancia expresó que:

Los hechos de este caso ocurren durante el período navideño, razón por la cual la tienda sería frecuentada por un número mayor de clientes. La misma se encontraba repleta de mercancía, la cual hubo que acomodar hasta en los pasillos destinados al tránsito de los clientes. El deber jurídico de K-Mart era mantener un lugar seguro para sus clientes invitados y cerciorarse de no crear condiciones peligrosas que, por su naturaleza, pudieran causar daños a cualquier persona. La prueba demostró que personal de K-mart acomodó en estibas, en el medio de un pasillo dentro del área destinada a los clientes, unas cajas de 2 a 3 pies de alto cada una, con mercancía dentro de ellas, sin tomar otras precauciones para evitar que las cajas, por acción de otra persona o por su propio peso y desbalance se cayeran, como sería amarrarlas, o poner algún rótulo advirtiendo de su peligrosidad o para que no fueran tocadas o para que se pidiera ayuda en caso de que alguien interesara algo de alguna de esas cajas. Apéndice, pp. 44-45.

[3] La indemnización concedida se distribuyó de la siguiente manera: (1) a la codemandante, Sra. Colón González, la suma de $60,000 por los daños y angustias físicas y mentales ocasionadas por el accidente, más $5,200.00 por concepto de lucro cesante; (2) a su esposo la suma de $15,000.00 por concepto de sufrimientos y angustias mentales y (3) a la sociedad legal de gananciales la suma de $864.28 por concepto de los gastos incurridos en tratamientos médicos y medicamentos.

Además, **como argumento alterno**, el TPI sostuvo que, en todo caso, su fallo se justificaba al amparo de la doctrina *res ipsa loquitur*. Finalmente, resolvió que Kmart actuó temerariamente al haber negado su negligencia y responsabilidad. La condenó, por tanto, al pago total de $81,064.28, más costas y $2,000.00 de honorarios de abogado. La sentencia se dictó **el 25 de febrero de 2000.**[4]

Inconforme, Kmart presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones (TCA) el 19 de abril de 2000. En esencia, como error planteó la utilización de la doctrina *res ipsa loquitur* para hallarle responsable por los daños; planteó, además, que las partidas de indemnización eran excesivas; y, por último, planteó que no fue temeraria, y que el cómputo de intereses por temeridad fue incorrecto.

Tras las partes presentar una exposición narrativa estipulada de la prueba oral y luego de haber comparecido con sus correspondientes alegatos, el 31 de octubre de 2000, el TCA dictó sentencia revocatoria de la sentencia del TPI y desestimó la acción de daños y perjuicios presentada por la peticionaria.

El fallo del TCA estuvo basado principalmente en lo resuelto por este Tribunal en el caso de *Admor. F.S.E. v. Almacén Román Rosa*, **res. el 20 de junio de 2000**, 151 D.P.R. __, 2000 T.S.P.R. 111, 2000 J.T.S. 122.[5] El TCA entendió que

---

[4] **Se archivó en autos copia de la notificación de la sentencia el 20 de marzo de 2000.**

[5] En dicho caso resolvimos abandonar la utilización de la doctrina de *res ipsa loquitur* en nuestra jurisdicción, por estimarla innecesaria. Indicamos que, en todo caso de daños y perjuicios, será suficiente referirse al derecho positivo –es decir, al artículo 1802 del Código Civil, *supra*, y a las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV.

en vista de lo allí resuelto, el foro de instancia estaba impedido de utilizar la doctrina *res ipsa loquitur*. Sostuvo, además que, debido a que la parte demandante no demostró en qué consistió la negligencia de Kmart —o sea, no probó el elemento de causalidad— ésta no podía ser responsable extracontractualmente. Sobre este particular indicó que:

> si bien es cierto que las cajas estaban estibadas unas sobre otras en medio de un pasillo por donde transitan los clientes de la tienda, ese dato, sin más, no produce de ordinario un accidente. No se demostró que las cajas estuvieran mal estibadas o que de algún modo presentaran una condición peligrosa. Tampoco se probó la causa por la cual las cajas cayeron sobre la [peticionaria]. Ello pudo deberse muy bien a la negligencia de otro cliente o persona desconocida, y a que las cajas no estaban bajo el control exclusivo de K-Mart. Nada impide que una tienda almacene mercancía en el área a la que el público tiene acceso. . . . No hay prueba en autos de que esa sea la situación que nos ocupa. Ni siquiera se trató de demostrar que K-Mart tenía conocimiento de que alguna de las cajas se había movido o de otro modo estaba a punto de caerse por la suceda [sic] en sus tiendas.
> Evidentemente, la parte [peticionaria] descansó en la doctrina de *res ipsa loquitur* para establecer la negligencia . . . .[6]

De dicha sentencia acudió ante nos la peticionaria, mediante recurso de *certiorari* presentado el 22 de diciembre de 2000. En su recurso, la peticionaria formula el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al apreciar la prueba y descartar cualquier inferencia de la misma como explicación del accidente ocurrido en Kmart.

El 26 de enero de 2000 emitimos resolución expidiendo el recurso. Las partes han comparecido. Estando en posición de resolver, procedemos a hacerlo.

II

El artículo 1802 del Código Civil, *supra*, establece que la persona que por acción u omisión cause daño a otro interviniendo culpa o negligencia, estará obligada a reparar el daño causado, siempre que concurran tres elementos básicos: 1) la presencia de un daño físico o emocional en el demandante; 2) que haya surgido a raíz de un acto u omisión culposa o negligente del demandado; y 3) que exista un nexo causal entre el daño sufrido y dicho acto u omisión. *Cintrón Adorno v. Gómez*, res. el 22 de febrero de 1999, 147 D.P.R. ___, 99 T.S.P.R. 18, 99 J.T.S. 20.

Repetidamente hemos reconocido, además, que **el deber de previsión** es el criterio **central** de la responsabilidad extracontractual. *Dworkin v. S. J. Intercont. Hotel Corp.*, 91 D.P.R. 584, 586 (1964); *Molina Rodríguez v. Caribe Motors Corp.*, 90 D.P.R. 458 (1964); *Pabón Escabí v. Axtmayer*, 90 D.P.R. 20 (1964); *Cruz Costales v. E.L.A.*, 89 D.P.R. 105 (1963); *Weber v. Mejías*, 85 D.P.R. 76, 80 (1962); *Ortiz Fuentes v. Presbysterian Hospital*, 83 D.P.R. 308 (1961); *Baralt* et al. *v. ELA*, 83 D.P.R. 277, 283-284 (1961).

Por su parte, la negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplirse con el deber. Dicho de otro modo, "un daño no genera una causa de acción por negligencia si dicho

---

[6] Apéndice, pág. 110-111.

daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable." Herminio Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, Publicaciones JTS, 1989, pág. 185. Véase además *Miranda v. E.L.A., supra*; *Ocasio Juarbe v. Eastern Air Lines*, 125 D.P.R. 410 (1990); *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700, 705-706; *Salvá Matos v. A. Díaz Const. Corp.*, 95 D.P.R. 902, 906-908 (1968). No puede ser de otro modo, pues ello implicaría que una persona estaría obligada a prever todos los posibles riesgos que podrían concebiblemente estar presentes en múltiples situaciones, imponiéndole así una responsabilidad absoluta.

III

Ahora bien, es norma conocida en nuestra jurisdicción que cuando una empresa mantiene abierto al público un establecimiento, con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, tiene el deber de mantener dicho establecimiento en condiciones de seguridad tales que sus clientes no sufran daño alguno. *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644 (1985); *Aponte Betancourt v. Meléndez*, 87 D.P.R. 652 (1963); *Weber v. Mejías*, *supra*; *Santaella Negrón v. Licari*, 83 D.P.R. 887 (1961); *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956); *Gutiérrez v. Bahr*, 78 D.P.R. 473 (1955). Este deber implica que el dueño u operador tiene **el deber de ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño**. *Soc. Gananciales v. G. Padín Co. Inc.*, 117 D.P.R. 94, 104 (1986). En particular, los propietarios de establecimientos comerciales son responsables por los daños ocasionados a causa de aquellas condiciones peligrosas existentes, siempre que éstas sean conocidas por los propietarios o su conocimiento le sea imputable. *Cotto v. C.M. Ins. Co., supra.*

De ningún modo significa ello que el dueño de un establecimiento comercial asume una responsabilidad absoluta frente a cualquier daño sufrido por sus clientes. **Para que se le imponga responsabilidad, el demandante tiene que probar que el dueño no ejerció el debido cuidado para que el local fuese seguro**. En los casos de accidentes en establecimientos comerciales, este Tribunal ha impuesto responsabilidad siempre que el demandante pruebe que existían condiciones peligrosas dentro de las tiendas correspondientes, "las cuales eran de conocimiento de los propietarios o su conocimiento podía imputárseles a estos". (Énfasis suprimido.) *Cotto v. C.M. Ins. Co., supra*, pág. 650. En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, y que esa condición fue **la que con mayor probabilidad ocasionó el daño**, y que la misma era conocida por el demandado, o que debió conocerla. *Admor. F.S.E. v. Almacén Román Rosa, supra.*

Por su parte, le **corresponde a los tribunales de primera instancia evaluar la prueba presentada y determinar en cada caso si (por preponderancia de la prueba) existía una condición peligrosa y si ésta era del conocimiento del dueño del establecimiento**. *Id.*; *Cotto v. C.M. Ins. Co., supra.*

A poco que se examine la sentencia del TPI, se observará que la responsabilidad impuesta a la parte recurrida se funda en el incumplimiento de su deber de previsión. En otras palabras, el TPI concluyó que Kmart incumplió su deber legal de mantener condiciones de seguridad razonables en su establecimiento, y de prever que dichas condiciones tenían un alto potencial de causarle daño a sus clientes. Asimismo, Kmart actuó negligentemente al permitir que el personal de su tienda colocase unas cajas llenas de mercancía, en estibas, en el mismo medio de un corredor entre dos estantes, por donde transitaban diariamente cientos de sus clientes, y en plena época navideña. Ciertamente ello constituía una condición peligrosa que Kmart conocía, o debió conocer, y que previsiblemente pudo ocasionar daños a sus clientes, como en efecto ocurrió. A más de esto, incumplió su deber cuando no tomó medidas provisionales de protección para evitar que las cajas, por acción de otras personas o por su propio peso o desbalance, se cayeran y causaran daño a sus clientes.

Esa fue precisamente la razón por la cual el TPI le impuso responsabilidad a Kmart. Así surge claramente de su sentencia.[7] La condición peligrosa creada por Kmart dentro de su establecimiento en un área designada para el flujo de clientes fue la causa eficiente y próxima del accidente que ocasionó los daños a la parte demandante.

No surge de la sentencia indicio alguno de pasión, prejuicio, parcialidad o error manifiesto; por tanto, debemos abstenernos de intervenir con la apreciación hecha por dicho tribunal. *Rolón v. Charlie Rental Car, Inc.*, res. el 2 de junio de 1999, 148 D.P.R. __, 99 T.S.P.R. 83, 99 J.T.S. 89; *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49 (1991); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 654 (1986); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983); *Pueblo v. Turner Goodman*, 110 D.P.R. 734, 738 (1981).

IV

Por último, el TCA concluyó en su sentencia que el foro de instancia resolvió que Kmart es responsable de los daños ocasionados a la peticionaria, a base de la aplicación de la doctrina *res ipsa loquitur*; y que debido a nuestra decisión en el caso *Admor. F.S.E. v. Almacén Román Rosa, supra*, donde invalidamos el uso de dicha doctrina en nuestra jurisdicción, dicho fallo de instancia no puede justificarse. En consecuencia, el TCA desestimó la demanda, resolviendo que Kmart no fue negligente, ya que la parte demandante, aquí peticionaria, nunca logró demostrar la causa por la cual se cayeron las cajas que le causaron el daño. Erró el TCA al así resolver.

Sabido es que, como regla general, en un caso de daños y perjuicios donde se alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, el peso de la prueba respecto a dicha alegada negligencia le corresponde a la parte actora. *Matos v. Adm. Servs. Médicos de P.R.,* 118 D.P.R. 567 (1987); *Vaquería Garrochales, Inc. v. A.P.P.R.*, 106 D.P.R. 799 (1978); Irizarry v. A.F.F., 93 D.P.R. 416 (1966); *Morales Mejías v. Met. Pack. & Ware. Co.*, 86 D.P.R. 3 (1962).

---

[7] Apéndice, pp. 44-46.

En materia de responsabilidad civil extracontractual, el hecho productor del daño nunca se presume. Así pues, la mera ocurrencia de un accidente, sin más, no puede constituir prueba concluyente demostrativa de conducta lesiva antijurídica de la parte demandada, elemento indispensable para engendrar responsabilidad. J. Santos Briz, en M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. XXIV, pág. 104; *véase además* W.P. Keeton, *Prosser and Keeton on Torts*, § 39, pp. 242-262 (5ta ed. 1984). Por tanto, quien alegadamente sufre un daño por la negligencia de otro tiene "la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos". *Cotto v. C.M. Ins. Co.*, *supra*, pág. 651.

Por su parte, en *Admor. F.S.E. v. Almacén Román Rosa, supra*, resolvimos desautorizar el uso de la doctrina *res ipsa loquitur* en nuestra jurisdicción. Empero, fuimos enfáticos al indicar que su ausencia no crearía un vacío en nuestro derecho. Además, fuimos precisos al indicar que su invalidación de modo alguno significa que un demandante tiene el deber de probar la negligencia con prueba directa en todos los casos. Lo contrario ciertamente supondría un absurdo.

Es norma establecida en nuestra jurisdicción que cualquier hecho en controversia es susceptible de ser demostrado, no tan sólo mediante evidencia directa, **sino con evidencia indirecta o circunstancial**, es decir, con aquella evidencia que tienda a demostrar el hecho en controversia probando otro distinto, del cual —en unión a otros hechos ya establecidos— pueda hacerse una inferencia razonable que, a su vez, permita hacer una determinación conclusiva de cuáles son los hechos ciertos del caso. Regla 10(H) de Evidencia, 32 L.P.R.A. Ap. IV; E. Chiesa, *Tratado de Derecho Probatorio*, Tomo II, pág. 1239; *Admor. F.S.E. v. Almacén Román Rosa, supra*. Inclusive, hemos insistido en múltiples ocasiones que la prueba o evidencia circunstancial **es intrínsecamente igual** a la prueba directa. *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470, 479 (1992); *Pueblo v. López Rodríguez*, 118 D.P.R. 616 (1987); P*ueblo v. Rivera Rivera*, 117 D.P.R. 283 (1986); *véase además* Chiesa, *op. cit.*, pág. 1238.

En resumen, en nuestra jurisdicción está claramente permitido probar la negligencia mediante prueba circunstancial en los casos de daños y perjuicios, al igual que en otros casos. *Admor. F.S.E. v. Almacén Román Rosa, supra*. Desde luego, al considerar cualquier prueba circunstancial, los tribunales deben esforzarse por distinguir entre aquella que constituya mera conjetura y aquella que les permita hacer una inferencia razonable de negligencia. *Id.*; *Ortiz Torres v. K & A Developers, Inc.*, 136 D.P.R. 192, 200 (1994); *Vda. de Delgado v. Boston Ins. Co.*, 99 D.P.R. 714, 724 (1971).

En el caso de autos, si bien es cierto que el foro de instancia incluyó en su sentencia un breve análisis acerca de la aplicabilidad de la doctrina *res ipsa loquitur*, resulta evidente

que lo hizo con el objetivo de justificar su fallo con un **argumento alterno.**[8] Asimismo, estamos plenamente convencidos de que –tal como surge de la sentencia el TPI— quedó demostrada la negligencia de Kmart por ésta haber creado una condición peligrosa en su tienda, y no haber tomado medidas de precaución para la protección de sus clientes, lo cual resultó en el daño sufrido por la parte peticionaria. Incumplió su deber y, por tanto, procede imponerle responsabilidad. *Cotto v. C.M. Ins. Co., supra*.

En vista de lo anterior, se dictará sentencia para revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones el 31 de octubre de 2000 y se deja en vigor la dictada por el Tribunal de Primera Instancia el 25 de febrero de 2000.


BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO

---

[8] Véase Apéndice, pp. 46-47. Valga señalar, además, que a la fecha de la sentencia del TPI, aún no habíamos resuelto el caso de *Admor. F.S.E. v. Almacén Román Rosa, supra*.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Janet Colón González y otros

  Peticionarios

       v.

Tienda KMART y otros                       CC-2000-1065

  Recurridos

SENTENCIA

San Juan, Puerto Rico, a 26 de junio de 2001.

Por los fundamentos expuestos en la Opinión precedente, se dicta sentencia para revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones el 31 de octubre de 2000 y se deja en vigor la dictada por el Tribunal de Primera Instancia el 25 de febrero de 2000.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri concurren sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo